IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ANITA NOELLE GREEN, an individual, | ) ) | |
| Plaintiff, | ) ) | Case No. 3:19-cv-02048-MO |
| v. | ) ) ) | |
| MISS UNITED STATES OF AMERICA, a Nevada limited liability corporation doing business as United States of America Pageants, | ) ) ) ) ) | June 16, 2020 |
| Defendant. | ) ) | Portland, Oregon |

**Oral Argument**

(By Videoconference)

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES


FOR THE PLAINTIFF:      Ms. Shenoa L. Payne
                        Attorney at Law
                        65 S.W. Yamhill Street, Suite 300
                        Portland, OR 97204


FOR THE DEFENDANT:      Mr. John T. Kaempf (by telephone)
                        Kaempf Law Firm, PC
                        121 S.W. Morrison Street, Suite 1100
                        Portland, OR 97204


COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                        United States District Courthouse
                        1000 S.W. Third Ave., Room 301
                        Portland, OR  97204
                        (503) 326-8188

```
1              (P R O C E E D I N G S)

2           (June 16, 2020, 9:43 a.m.)

3                  * * * * *

4         THE COURTROOM DEPUTY:  We are here today in Case No.

5    3:19-cv-2048-MO, Green versus Miss United States of America,

6    LLC.

7         Counsel, please state your name for the record.

8         MS. PAYNE:  Shenoa Payne for plaintiff.

9         MR. KAEMPF:  This is John Kaempf for defendant

10   Miss United States of America.

11        THE COURT:  Thank you both for being here and

12   available today.

13        There are some nonconstitutional preliminary issues

14   that I want to talk about first, and then we'll get to the two

15   constitutional doctrines that have been briefed by the parties.

16        So first there are questions about what I can

17   consider, and that includes the idea of incorporation by

18   reference or not of Exhibits A, B, and C.  And so my own

19   tentative view, to start the discussion at least, or to start

20   the case moving forward and get to the constitutional issues,

21   is that it is appropriate for me to consider those for today's

22   purposes.  I'll bring that up later, because when we get to

23   discussion of freedom of association, it's -- I'll give away

24   the first point in advance, and that is that I'm seriously

25   considering delaying resolution of that matter until we have
```

1    limited discovery, and then taking it up as a question at
2    summary judgment, not motion to dismiss, in which case that
3    would also resolve the issue of how I ought to consider
4    Exhibits A, B, and C.  So I don't need to hear more about that
5    for today's purposes on considering A, B, and C.

6            The second is the statute of limitations issue.  And
7    so, again, I'll give you my tentative decision, and then I do
8    have a question for plaintiff's counsel.

9            It does appear to me that even if the factual dispute
10   I have in front of me about the statute of limitations goes
11   defendant's way and otherwise limits some of the discrete
12   events or harms that can be considered, that at a minimum the
13   case goes forward on injunctive relief.

14           Do you have any contrary view about that, Mr. Kaempf?
15           MR. KAEMPF:  No, Your Honor.  That's basically our
16   position, and I'm glad that you bought up the separate nature
17   of the injunctive, because I was going to do that as well.  So
18   agreed, Your Honor.

19           THE COURT:  All right.  And so with that in mind,
20   since the case will go forward in any event, I'll also, on a
21   better record at summary judgment, consider any other issues
22   about the overall application of the statute to the nature of
23   relief that can eventually be sought by plaintiff here.

24           Ms. Payne, I do have a question, just to make things
25   simpler for us here.  There is this fact dispute about the

1   Facebook screenshots in Exhibit Z -- Exhibit B as to whether

2   they really did occur on December 7th or December 20th.  Do you

3   have a position on that today?

4           MS. PAYNE:  I think that the exhibits show that they

5   did occur on December 7th.  We didn't have access to those at

6   the time we filed the complaint because Ms. Smith had removed

7   those from Facebook.  And so we would concede that for -- if

8   you're going to consider the Exhibits A through C, that it

9   would establish the Facebook conversations did occur

10  December 7th.

11          I don't know if you want argument on whether that

12  should limit the plaintiff's claim to damages or injunctive

13  relief at this time or whether you want to hear that later.

14          THE COURT:  No, I'll take that up later.  Thank you.

15          As I said, what I'm doing with the statute of

16  limitations is waiting to resolve it formally.  We know the

17  case will go forward at least in part, and there's the open

18  question then about whether it's purely an injunctive case or

19  whether it includes the January application and return of the

20  fees, et cetera, and we'll just deal with that later.

21          All right.  The third issue is whether plaintiff

22  properly alleged that the denial of her application was because

23  of her gender identity.  And that's a -- in one sense, that's a

24  serious issue, in that I think the allegations are somewhat

25  conclusory.  In some cases, it's not at all clear how an

1    amended complaint would take care of that problem, and here, in

2    my view, at least, it's abundantly clear how an amended

3    complaint could take care of that problem rather easily.  I

4    think we could probably have an amended complaint that solves

5    the problem by noon today.

6           So at the end I'll come back to that.  I'm likely to

7    require amendment in order to satisfy that demand, but I'm not

8    going to defer talking about the issues today because I view

9    the problem so readily solved.

10          So the last preliminary issue, and one that I'm

11   obligated in the sort of chain -- the decision tree in this

12   case, the hierarchy of analysis -- to take up first is

13   whether -- what to do with the Oregon state constitutional

14   argument.

15          And so that argument plays forward in the briefing on

16   the merits, except for plaintiff's argument that I ought not to

17   consider it because it's entirely derivative of the federal

18   First Amendment argument, and derivative application of Oregon

19   free speech in a case that also has First Amendment arguments

20   has been frowned upon in Oregon courts.

21          I disagree that it's so derivative that it runs afoul

22   of the principle that I've just described, and so I am going to

23   consider it on the merits.  I'm not going to hear argument

24   about it because I think it does require, at a minimum, some

25   thought about the free speech implications first.  And my own

1  tentative view -- quite tentative at this point, but enough to
2  form how we're going to go forward at oral argument -- is that
3  the Oregon constitutional argument does not go defendant's way.
4       I bring that up only to say that because of that, it
5  makes sense to consider the federal constitutional arguments.
6  Otherwise, if I were highly confident that defendant would win
7  under the Oregon Constitution, there would be no need to
8  consider further arguments.  But because I see it in a
9  different way, I'm going to focus all of our attention today on
10 the two federal constitutional arguments.
11      So I want to start with the free speech argument, and
12 I'm going to get to my questions here in just a moment, but I'm
13 going to tell you in advance that I'm going to be asking you a
14 hypothetical.  And I've struggled lately with attorneys and
15 hypotheticals.  I don't think I'm going to struggle today,
16 because my impression from the briefing is that the two of you
17 are adept at juggling ideas in constitutional cases, but I'll
18 just tell you this.  When I ask a hypothetical, you don't have
19 to say, "Well, that's not my case," and "Reserving my arguments
20 to the contrary," et cetera.  I understand that when you answer
21 my question, you're only answering a hypothetical.
22      And it's not quite a hypothetical.  It actually just
23 asks you to imagine a world in which *Hurley* hasn't happened
24 yet.  For reasons I will get to later, I think it will help us
25 look at the case without *Hurley*, and then ask the question how

1    *Hurley* applies.

2         So since, Mr. Kaempf, you've devoted several pages to

3    *Hurley*, don't worry, we're going to get to *Hurley* and how it

4    applies, but I want to ask first how we might think about the

5    case before we apply *Hurley*.

6         MR. KAEMPF:  Your Honor, John Kaempf for the

7    defendant.  May I begin?

8         THE COURT:  Well, I haven't -- I'm now on my first

9    question, and so here we go.

10        MR. KAEMPF:  Oh, no, I am sorry.  You go ahead, Your

11   Honor.

12        THE COURT:  Thank you.

13        So the first question is, under traditional First

14   Amendment analysis, the first question is does the OPAA

15   regulate speech or conduct on its face.  We'll get to the

16   question that's more the subject of all your briefing, but I'm

17   assuming on that first question, which is the question we first

18   ask in this line of cases that takes us towards *Spence* and

19   *O'Brien* eventually, whether the OPAA regulates speech or

20   conduct on its face.  So that's not asking what relief

21   plaintiff is seeking in this case, it's rather a step upward in

22   the sort of telescopic decision tree here.

23        So, Mr. Kaempf, I'm assuming the answer to that

24   question is agreed upon by all of us, that on its face the OPAA

25   only regulates conduct.  Do you agree?

1          MR. KAEMPF:  Well, I would agree that what we're

2    talking about today, Your Honor, is an as-applied challenge

3    based on what's alleged in the complaint.

4          THE COURT:  All right.  So that's easy.  The next

5    question is the one you just raised, and that is as applied

6    here, is the conduct being regulated -- that is, another way to

7    think about it is the way you, Mr. Kaempf, framed it, and that

8    is is what plaintiff is seeking here the regulation or

9    enforcement of expressive conduct subject to First Amendment

10   protection, or is it just conduct, not something in the First

11   Amendment?

12          I'll start with you, Mr. Kaempf.

13          MR. KAEMPF:  Your Honor, what we are seeking to do

14   here is regulate our right to associate.  That's a First

15   Amendment right.  And in the *Roberts v. Jaycees* case from the

16   U.S. Supreme Court, the Court said, "The freedom of association

17   plainly presupposes the freedom not to associate."

18          And then going from *Roberts*, you have the *Dale v. Boy*

19   *Scouts* case, and in that case, the scoutmaster, you know from

20   the brief, he was openly gay, and much like the plaintiff here,

21   as is her First Amendment right, Mr. Dale was an open gay

22   rights activist, like the plaintiff is a transgender activist.

23   And the Court in *Dale v. Boy Scouts* held that the plaintiff

24   could not force his inclusion into the Boy Scouts, which

25   opposed the homosexual conduct, according to its statement of

1    values, and morally clean and straight and all of that.

2           So I know you --

3           THE COURT:  I'll pause you there for a moment.

4           MR. KAEMPF:  But I do think *Boy Scouts* and *Dale* is

5    very important again because of being an activist and the Boy

6    Scouts opposing homosexuality, and you cannot have a forced

7    inclusion.

8           And that is exactly what the plaintiff is asking for

9    here.  She admits in the complaint that my client's pageant is

10   a public platform, and wants to force my client to include her

11   message that is contrary to my client's, which is to empower

12   biological natural-born females.

13          And also, Your Honor --

14          THE COURT:  Mr. Kaempf, can you hear me all right?

15          MR. KAEMPF:  Yes.

16          THE COURT:  All right.  I need to pause you there for

17   a moment for two reasons.  One, I know this is a little tricky,

18   but it's very helpful to the court reporter and me if you make

19   sure that when you're not speaking you're muting your computer.

20   Can you do that for me, each of you?

21          MR. KAEMPF:  Oh, my computer is off.  Certainly.

22          THE COURT:  Right.  So that's number one.

23          And then number two, I'm asking questions that take

24   us through the traditional First Amendment analysis for free

25   speech along the lines of *Spence* and *O'Brien*, and which will

1    eventually get to *Hurley*.  So we're not in the same ballpark as

2    *Dale* yet.   I guess I'm not ready to hear about *Dale*.

3            I take it from your argument, though, that you -- and

4    from your briefing that you are adamant on the point that

5    what's being regulated here is expressive conduct; that the

6    relief plaintiff --

7            MR. KAEMPF:  Yes.  And the First Amendment right of

8    free association, which includes who to not associate with.

9            THE COURT:  Well, one at a time.  All right?  We'll

10   get to association, but it will only muddle your point if you

11   try to join *O'Brien* and *Spence* on one hand and *Dale* together.

12   We'll come to *Dale* later.

13           Fair enough?

14           MR. KAEMPF:  Certainly, Your Honor.

15           I would also briefly mention -- I don't know if

16   you'll view it as the same or not, but the *McDermott* case, the

17   2010 Ninth Circuit case, which holds that newspapers which are

18   for profit, like my client, they have the First Amendment right

19   to choose their writers and who submits op-eds in a for-profit

20   situation.  And, again, that also involves First Amendment

21   rights of speech and association.  So that's another important

22   case separate from *Hurley* and *Dale*.

23           THE COURT:  Thank you.

24           Ms. Payne, same question.  Is the conduct being

25   regulated here what you would call under traditional First

1    Amendment analysis expressive conduct?

2            MS. PAYNE:  No, Your Honor.  The defendant in its

3    brief focuses on two expressive -- the content of its pageant,

4    its mission or message that defendant asserts is promoting

5    biological women is expressive content, and in selecting its

6    contestants.

7            The first is not in the pleadings or in Exhibit A.

8    Defendant's mission or message, which we would not dispute is

9    an important expressive content, is promoting women, promoting

10   or uplifting women.  That in itself could be expressive

11   content, but it is not, as defendant says, promoting biological

12   women or cisgender women, which I think is more appropriately

13   described.

14           THE COURT:  Can I pause you there for just a moment?

15           So that's an argument that there can be a message

16   here that is expressive conduct.

17           MS. PAYNE:  Correct.

18           THE COURT:  But that nothing you're requesting by way

19   of relief runs afoul of that message, right?

20           MS. PAYNE:  Correct.  And so our argument is that

21   this Court doesn't even really need to decide whether there is

22   expressive content because defendant can't show that anything

23   plaintiff is asking for would interfere with that expressive

24   content.  So even if this Court were to decide that there is

25   expressive content, it really doesn't need to decide that

1    either way because defendant can't show prong two, which is

2    that what plaintiff is requesting would ever interfere with

3    such expressive content.

4              So whether this Court decides there is or isn't

5    really isn't going to decide this issue.  It is whether what

6    plaintiff is requesting is going to interfere with that

7    expressive content.  So we would concede that potentially there

8    is expressive content here, it's just what plaintiff is asking

9    for isn't going to interfere with what defendant has

10   actually -- its message is actually put out to the public.

11             THE COURT:  So I have to two questions about that, if

12   I could ask.  The first is not so much a question, I guess --

13   Well, it is.  That argument you've just made about interference

14   or not with the core message of a group is why you think your

15   relief doesn't run afoul of First Amendment analysis, but why,

16   say, a non-Native American applicant might run afoul of the

17   message of a Native American pageant, right?

18             MS. PAYNE:  That's absolutely correct.

19             THE COURT:  And then, secondly, your argument does

20   depend on the message that the pageant in our case is

21   advancing, including -- well, not being limited to biological

22   women.  If the message were, in fact, hypothetically speaking,

23   a pageant for biological women, then your client's application,

24   in the same way as we just talked about with the Native

25   American pageant, would have a different impact on that speech,

1  right?

2       MS. PAYNE:  It would, but I just want to be clear

3  that -- I mean, you don't want to talk about *Hurley* yet, but

4  the law is very clear that the exclusion isn't message based.

5  The exclusion here is only status based, and that's another

6  reason why the defendant's argument fails, because this --

7       THE COURT:  Well, before you make that argument,

8  that's why I asked the question about the Native American

9  pageant, because the --

10       MS. PAYNE:  -- (indiscernible) the associational

11  claim and the selection claim, why selection in itself is also

12  not (indiscernible).

13       Also, there's nothing on the pleadings for the

14  defendant prior to discovery that shows that it also exercises

15  any sort of creative control over the selection of its

16  contestants, which, you know, absent any sort of discovery or

17  showing on the pleadings -- which defendant can't do -- it

18  doesn't exercise any sort of creative control over the

19  selection of its contestants, such that it needs to preserve

20  the expressive content of its pageant in a way that defendant

21  is arguing.

22       So I think there's --

23       THE COURT:  Let me just get back to the Native

24  American pageant for a moment, because I was interested in your

25  answer there, and I think it helps me understand your position.

1        So we are just talking about the First Amendment free
2   speech guarantee right now, not freedom of association.  As I
3   told Mr. Kaempf, we'll get to association in a minute.

4        So I thought your view was that your client doesn't
5   interfere with the potentially creative expression of a pageant
6   celebrating women, and conversely, if you have a pageant that's
7   openly celebrating Native American women, that the admission of
8   a non-Native American would interfere with that message.
9   That's your first point, right?  Do you agree with that?

10       MS. PAYNE:  Yeah, I would.  I mean --

11       THE COURT:  Just let me get a quick answer to that
12  argument.

13       MS. PAYNE:  (Indiscernible) the *Apilado* case out of
14  Washington.  I mean, they had an entire gay identity wrapped up
15  in their softball league, and they really promoted the softball
16  league around that gay identity.  And so I think that --

17       THE COURT:  Let me stop you there.

18       To your point that this doctrine really only matters
19  if you're excluding based on message not status, I mean, what
20  we're talking about with the Native American pageant -- it's a
21  hypothetical but it actually exists -- is exclusion by status,
22  right, not by message?

23       MS. PAYNE:  Yes.

24       THE COURT:  And so I guess I'm asking is it or is it
25  not the case that you can run afoul of free speech protections

1    if your exclusion is by status?  You've suggested if the

2    exclusion is by status, it can't possibly run afoul of First

3    Amendment protection, but if you have a Native American pageant

4    and you exclude by status anyone who is not Native American,

5    you've also suggested that could run afoul of the First

6    Amendment.  So how do you reconcile those?

7             MS. PAYNE:  I think we're getting into the free

8    association aspect versus the free speech, but I think the free

9    speech is you have to exclude based on message not status.  I

10   think --

11            THE COURT:  I'm going to pause you there.  So when

12   you told me that there could be a problem with a Native

13   American pageant allowing, being forced to allow in a

14   non-Native American, your answer was essentially grounded in

15   the freedom of association not freedom of speech?

16            MS. PAYNE:  Right.  Yes, I believe that's correct.

17            THE COURT:  And so you don't think, I take it, that

18   there's a First Amendment issue involved in requiring -- excuse

19   me, I shouldn't have said that.  A free speech issue involved

20   in requiring a Native American pageant to let in non-Native

21   Americans?

22            MS. PAYNE:  Yes.  And to the extent that I said

23   otherwise earlier, I was then referring to freedom of

24   association not freedom of speech.

25            THE COURT:  And you have the same answer in our

1    pageant for allowing -- being required to allow in men who

2    identify as men.  Do you think that's only a freedom of

3    association question or does it also run afoul of *Spence* and

4    *O'Brien*?

5          MS. PAYNE:  I think that would be a freedom of

6    association issue not a freedom of speech issue.  It would have

7    to be based on message not status.  I think when we get to

8    freedom of association that we may have problems talking about

9    freedom of association based on the core message of the

10   pageant, and permitting men into the pageant would interfere

11   with -- for associational reasons but has nothing to do with

12   the message that the men are speaking.  It has everything to do

13   with who the men are and their status.

14         THE COURT:  Well, I thought earlier your argument was

15   certainly if you have a pageant that only allows in and

16   celebrates the beauty of Native American women, and you're

17   forced to allow in non-Native American women, that can

18   interfere with the message, right?  I thought your point was

19   just that too bad, because we don't protect exclusions based on

20   status as opposed to message.

21         MS. PAYNE:  So it's not just whether it interferes

22   with the pageant message, because that -- you're saying that

23   that forces the -- that somebody's status can force the pageant

24   to speak a message.  *Hurley* says otherwise.  Cases that follow

25   *Hurley* say otherwise, that someone's status cannot force

1    someone to speak a message.  It has to be message based.  *Klein*

2    said otherwise, cases following *Klein*.  If you look at *Elaine*

3    *Photography* out of New Mexico, all these cases say if you try

4    to exclude an entire group based on their status, that's not

5    forcing someone to speak a message.  It's the cake-baking

6    cases.  It's all these cases where you say you're not forcing

7    someone to put a message on a cake, what you're doing is you're

8    refusing service altogether.  And so that's not forcing someone

9    to change the expressive content of their expressive activity.

10   You're just -- you're just forcing them to include someone in

11   their services.

12            THE COURT:  Thank you very much.  I appreciate it.

13            Mr. Kaempf, so same sort of question.  You said it's

14   expressive conduct here, and how would you then -- again, we're

15   just taking a minute here to talk about the case under

16   traditional First Amendment analysis.  So how would you apply

17   the two -- the two cases you never really applied in your

18   briefing, and that's *Spence* and *O'Brien*?  How would they apply

19   here if you had to apply them?

20            MR. KAEMPF:  Well, the expressive conduct is stated

21   in the preexisting rules that are not disputed and that are in

22   the record that this is about empowering biological women and

23   natural-born females, and in promoting, quote, sisterhood.  And

24   that is my client's right to promote that, and that's what its

25   pageant has found.  And then what we have is not a status issue

1    but someone who says, no, you must change that and now include

2    me and my opposing view that transgender women are the same as

3    biological women.  That violates both our First Amendment, free

4    exercise -- excuse me, free speech, as well as the right of

5    association.

6            THE COURT:  All right.  Thank you.

7            So then how -- I'll start with you, Ms. Payne.  How

8    does *Hurley* change the analysis that would traditionally be

9    engaged in under *O'Brien* and *Spence* here, if at all?  What's

10   your view on what *Hurley* did to preexisting free speech case

11   law?  Ms. Payne?

12           MS. PAYNE:  Well, *Hurley* basically says that

13   organizations can't be forced to speak a message or include

14   somebody else's message that they disagree with.  And our

15   argument is that *Hurley* doesn't apply here, particularly

16   because defendant rejected plaintiff without asking what

17   plaintiff's message was, and it's excluding transgender women

18   not based on any potential message that transgender women are

19   potentially speaking.  It's a status-based exclusion.

20           And *Hurley* expressly spoke about the fact that in

21   *Hurley*, LGBT people were allowed to participate in the parade,

22   and that it wasn't an across-the-board status exclusion but it

23   was based on the fact that this particular LGBT group was

24   carrying a banner and celebrating the -- their LGBT status as

25   an Irish pride LGBT person, and that that was against what the

1  parade providers were -- it was against their core message, and

2  the parade providers didn't want to carry that message as part

3  of the parade.

4         THE COURT:  All right.  Can I pause you there for a

5  moment?  I'd like to restate your argument just to see if I

6  have it right.

7         MS. PAYNE:  Perfect.

8         THE COURT:  So I think you're saying that *Hurley*

9  starts with the overall question, you know, about public

10  accommodations laws, but ends up saying that they don't -- that

11  public accommodations laws, in terms of what was being sought

12  for relief in *Hurley*, simply didn't apply; that is, that people

13  could join the parade, there was no limitation on participation

14  based on status, and that somewhere along the way the

15  enforcement of the law on the particular facts in *Hurley* had

16  resulted in the direct regulation by state statute of speech.

17  In fact, it had resulted in compelling speech.  But that

18  without that, without that sort of set of facts that take the

19  case outside of public accommodations laws, *Hurley* doesn't

20  necessarily apply.  Is that your argument?

21         MS. PAYNE:  That's correct.

22         THE COURT:  And then I do want to ask, your complaint

23  suggests that plaintiff's participation in the pageant is

24  driven by a desire to share a message.  How does that bring or

25  not bring this case within *Hurley*?

1          MS. PAYNE:  Because her message is not LGBT based.

2    It's not transgender based.  It's not any different message

3    than any other participant would share.  It's to be an example,

4    to -- to be a positive example, and that's exactly consistent

5    with what defendant's message is, to promote all women, and

6    that's what plaintiff's message is, to promote women.  So

7    unlike the individual in *Hurley* who wanted to carry a banner

8    promoting (indiscernible) message, plaintiff has not stated

9    that she's going to have a message promoting transgender women

10   or LGBT issues, and that's also not what plaintiff has said

11   that her message is going to be.  And so her message is

12   absolutely consistent with defendant's stated mission.

13          THE COURT:  Thank you.

14          So does that mean that for, again, for First

15   Amendment free speech implication only, not freedom of

16   association, that a biological male applicant who wanted to

17   promote women and be consistent with the message of this

18   pageant, under Oregon's public accommodation law, would be

19   required to be allowed to enter the pageant?

20          MS. PAYNE:  Well, I dispute calling my client a

21   biological male.

22          THE COURT:  No, I didn't.  That wasn't my question at

23   all.

24          MS. PAYNE:  Sorry, sorry.

25          THE COURT:  I was asking about the implication of

1    your argument.  Does your argument mean that if a biological

2    male applicant wanted to join the pageant and step up and

3    enhance the message of the pageant to further the cause of

4    women, that the OPAA would require the pageant to allow him to

5    enter, at least as against only a free speech challenge?

6            MS. PAYNE:  On a free speech challenge only?  I think

7    so, on a free speech challenge only.

8            THE COURT:  All right.  Thank you very much.

9            Mr. Kaempf, same question.  We talked about the --

10   well, actually backing up to the original question, not the one

11   I just asked, we talked about the application of traditional

12   free speech cases.  Now I'm asking you how did *Hurley* change

13   the landscape of that at all?

14           MR. KAEMPF:  Sure.

15           And back to when you mentioned *O'Brien*, the

16   traditional First Amendment you talked about, as mentioned in

17   our brief, what -- the relief plaintiff requests is not

18   narrowly tailored to serve a compelling interest.  And so it

19   would fail under that as well under our brief.

20           The way that *Hurley* changed it is by making even more

21   express what was first recognized by the United States Supreme

22   Court in 1958, that the First Amendment also contains a right

23   of free association, and further *Hurley* held -- as you know,

24   that was the GLIB, the LGBTQ group that this Boston Veterans

25   Council, in the St. Patrick's Day Parade, they could not be

1    forced to include their banner because that freedom to

2    association, recognized in 1958 -- and *Hurley* amplified it

3    also -- included the freedom not to associate, as stated in the

4    1984 Roberts opinion.

5           So I would submit that we would win on this even if

6    *Hurley* didn't exist under the prior *O'Brien* analysis, but

7    *Hurley* and then *Dale* I think really is the end of plaintiff's

8    case on the First Amendment issue because of both free speech

9    and free expression and the right to not associate.

10          THE COURT:  Thank you.

11          MR. KAEMPF:  Your Honor, to something that Ms. Payne

12   just said.  She said, you know, this contest is to promote

13   women, but, you know, she skips over the key point, which is

14   that it's undisputed from her allegations in the exhibits we're

15   allowed to incorporate that we only promote biological women,

16   natural-born females.  That's not a small business.  That's the

17   heart of it.

18          And I would also mention that the very fact that

19   we're having this lawsuit proves our free association point.

20   Plaintiff admits that she wants a, quote, platform for her view

21   of what it means to be a woman and all that, and she went out

22   and sought a bunch of media attention locally and nationally.

23   And that's exactly our point.  Her position is unless you agree

24   with me and I am ordered by the Court, I'm going to be included

25   in your pageant.  If you don't do that, you're going to be

1    punished through some big damages and attorney fees.

2            So the fact that we're here and all the media

3    attention is exactly why we have *Hurley* and *Dale* holding no,

4    with respect, you cannot do that.  You can be an activist but

5    there are other pageants like Ms. Universe that you can go to

6    but not ours.

7            And I think it's important to point out that the

8    point of the First Amendment is that we have a diversity of

9    opinions.  No one is attacking the plaintiff for being

10   transgender, but we have competing opinions.  That's what the

11   First Amendment is about.  And what they want is, she says, I

12   get to speak what I want, but you, defendant, don't get to have

13   your unique message.  That is not allowed because the First

14   Amendment is a two-way street.

15           THE COURT:  All right.  Thank you very much.

16           I want to turn to the freedom of association.  And

17   the first question really is whether the pageant here is or is

18   not an expressive association.  I'm going to ask a question

19   that won't require you to cite a lot of facts, but rather it

20   will ask you to tell me a methodology.

21           So my question is what is the test or the method in

22   the case law determining whether a group is an expressive

23   association or not?  What's the test?

24           I'll start with you, Ms. Payne.

25           MS. PAYNE:  Well, thank you, Your Honor, for pointing

1    out to the *IDK* case.  I think the test is actually a little
2    squishy, and it's not exactly clear, and it does rely on a lot
3    of facts as to whether an organization is expressive versus
4    commercial, for instance.  And it does depend on a lot of
5    facts, and I think Your Honor made a good point by sending us a
6    lot of questions about how an organization, for instance,
7    generates revenue and expresses contestants' views, but I think
8    that even the Ninth Circuit case, it cited to a Supreme Court
9    case, which I'm sorry, I'm blanking on right now as to, you
10   know, that it's not always easy to tell.
11          And this is one of the reasons why I asked for
12   discovery in this case, because I think that, for instance, in
13   this case, there are certain aspects of this pageant cited in
14   Defendant's Exhibit A that involve a personal interview and an
15   on-stage question that could be considered expressive, but I
16   don't -- I haven't had the opportunity to explore what those
17   entail, and it's really unclear at this point what those are.
18          And as I cited in my brief, you know, pageants have
19   been considered expressive before, but they had talent
20   portions, so this pageant doesn't appear to have a talent
21   portion, but it's really unclear what -- it's kind of like you
22   know it when you see it, it seems to be how the cases seem to
23   treat what is truly expressive versus not expressive.  And I
24   don't know that there's a particular test, but cases seem to
25   say, you know, art and TV shows are expressive, and I don't

1　know that this pageant really reaches that kind of expressive

2　activity, but surely on the face of the pleadings, I don't know

3　that you can reach that.

4　　　　And as I stated before, I don't know that this Court

5　needs to decide that issue because there is no interference

6　with that expressive activity, even if this Court were to

7　decide it were expressive activity, but I think that the

8　questions that the Court sent us as to whether this particular

9　pageant is inherently expressive certainly can't be decided on

10　the face of the pleadings, and discovery is needed to determine

11　that question.

12　　　　THE COURT:  So if I can summarize briefly, you're

13　telling me first that there is no identifiable test?

14　　　　MS. PAYNE:  I don't think so, not that I can tell

15　from the cases, and it seems to be that courts seem to say that

16　you know it when you see it.

17　　　　THE COURT:  You know, I've heard Potter Stewart

18　saying he's hated ever having that quoted back at him, so I'm

19　reluctant to use it to decide a case.

20　　　　Secondly, if I do order discovery, I'm ordering

21　discovery without knowing what its limits are because I don't

22　know what it is that you're supposed to go discover.

23　　　　What would be the limits of discovery if there's no

24　identifiable test?  What would you want to go discover?

25　　　　MS. PAYNE:  Well, particularly I think one of the

1    questions that I wanted discovery on in my declaration, as I
2    think is important to this Court, is whether any sort of
3    expressive activity is actually defendant's expressive activity
4    or the contestant's expressive activity.  I think that's an
5    important question for this Court, and something that this
6    Court asked us to answer today during oral argument is whether
7    the -- whether defendant actually has any sort of disclaimer to
8    the public that the contestants or individuals that are
9    competing against each other, whether, you know, during their
10   personal interview and when they're asking a question on stage,
11   whether that is their own individual expression or whether that
12   is defendant's expression.
13           THE COURT:  So you suggested that I don't need to
14   care about this answer too much because even if it is an
15   expressive association, there's nothing about what plaintiff is
16   seeking by way of relief that affects the association's ability
17   to express its viewpoint.
18           That gets us back, doesn't it, to the sort of
19   definitional argument you're making that if you define women in
20   the way that your case defines it, then there's no impact on
21   their message, but if defendants define women the way they
22   assert they want to define it, wouldn't you agree that it would
23   impact their message -- excuse me, their association?
24           MS. PAYNE:  Yes, but I -- again, I want to be very
25   clear that -- and case law is very clear that a discriminatory

1    membership policy, *Roberts* says this and the Oregon Supreme

2    Court has said this in *Lahmann* -- or I think it was the court

3    of appeals -- excuse me -- in *Lahmann* that a discriminatory

4    membership policy in and of itself cannot serve as expressive

5    content or conduct and cannot be the basis for a freedom of

6    association claim.  And so that's all that defendant has is a

7    discriminatory membership policy.

8              THE COURT:  If I'm agreeing that it's an expressive

9    association, then the next step is to sort of get at what

10   they're expressing, right, what their message is?  Doesn't *Dale*

11   suggest that I should show deference to the organization's own

12   statement about what its message is?

13             MS. PAYNE:  Not when the statement is contradicted by

14   their own -- by their own Exhibit A and their own website and

15   by their own information that they're attributing to the

16   public, which they're basically silent on anything regarding

17   transgender women, cisgender women.  What they say is that

18   their goal is to promote women and uplift everyone, that the

19   idea of ethnicity and beauty is what lies within, and what

20   they're saying to the public is contrary to what they say that

21   their message is.  Their only message lies in a policy, and

22   what the *Fair* (ph) case says is just because discrimination is

23   written down does not make it expressive conduct.

24             THE COURT:  Thank you very much.

25             Mr. Kaempf, same question.  By what test do I

1    determine whether your client is an expressive association or

2    not?

3           MR. KAEMPF:  Yes, Your Honor.  I would look to *Dale*

4    and *Hurley*, which is the basically are you requiring us to at

5    least expressively endorse a message that is contrary to our

6    own.  And here it's even more express than in *Dale*.  They just

7    wanted to silently march, but this plaintiff wants to compete

8    as a transgender female.  And so I would look to *Hurley* and

9    *Dale*, and again in *Dale* the issue was, okay, you are an open

10   homosexual activist, that's your right, but the Boy Scouts does

11   not support homosexuality or the lifestyle, as they call it in

12   the case.  That's test I would look to from *Dale* and *Hurley*.

13          I would also point out that Ms. Payne just said,

14   well, the defendant is silent about the issue of what it is to

15   be a woman.  That's not true.  Her complaint says -- and then

16   it's confirmed by the website that you can incorporate, that

17   the pageant is for biological natural-born females.  So we are

18   not silent about that issue.

19          The other point I would note is that in *Hurley* the

20   Court noted, kind of chiding the veterans parade, saying, you

21   know, what they're doing, what their message is is barely

22   articulated.  But it's a little more.  And I think ours is a

23   lot more than barely articulated, which was enough in *Hurley*.

24   We support biological natural-born females, and we want to

25   promote sisterhood, and that is our definition of what it means

1  to be a woman.

2          And, again, we're not attacking the plaintiff

3  personally for disagreeing, we're just saying that under the

4  First Amendment, we get the right to believe that, and she

5  cannot be forced into our pageant.  And she does carry our

6  message, like in the *Claybrooks* case, for example, when they

7  talked about who a TV station hires to be an anchor, because

8  Ms. Payne is trying to say, oh, it's really just the

9  contestants that are giving the message.  No, not when you say

10 in your complaint that you want to use our "platform" to say

11 that, then you are contradicting and making a message through

12 the Miss United States of America Pageant.  So you can't just

13 slice it off that way.

14          And it's also like when we talk about the cases that

15 we mentioned, *McDermott* from 2010 from the Ninth Circuit, a

16 newspaper, the people -- the writer that chooses -- sure,

17 they're the speaker, but they are carrying the defendant's

18 message, like someone who submits an op-ed, and that is subject

19 to First Amendment protection.

20          So I think that that's important to note that we're

21 not silent, we're expressly --

22          THE COURT:  Mr. Kaempf.  Mr. Kaempf.

23          MR. KAEMPF:  -- biological natural-born females.

24          And I also wanted to point out, Your Honor, on what

25 is expression.  We cited to you in the brief the *Norma Kristie*

1    case.  That was the gay pageant, where it was men dressing up

2    as women, I believe gay men, and that was their pageant.  And,

3    again, that's their right.  That's their First Amendment right.

4    But in that case, in *Norma Kristie*, the Court recognized that

5    that is expression.

6                And so in our pageant as well, although it is the

7    other side of the coin in First Amendment law, it is a pageant

8    that says no, only natural-born biological females.

9                So when you look at *Claybrooks* and *Norma Kristie* and

10    the *McDermott* opinion and *Hurley* and *Hale* -- *Dale*, excuse me,

11    you've got that expressive conduct and the right of association

12    all around.

13                And, again, we are not attacking her personally.  She

14    can do what she likes in all these other contests -- she won

15    the other contest in Oregon.  And, again, we don't dispute that

16    Ms. Universe allows transgender females, but we do not, and

17    that's our right.  And as in *Dale* and *Hurley* we, with respect,

18    ask that you not force us to include the plaintiff, because

19    under *Dale* and *Hurley*, this is not new ground, this is why they

20    published the cases, and you cannot force this person to be

21    included in our group.  That violates the fundamental right of

22    free association.

23                Thank you, Your Honor.

24                THE COURT:  Thank you.

25                Yeah, I need you to take a breath every now and then

1    so I can guide the discussion a little better.

2            So I am going to send this case forward on limited

3    discovery to summary judgment, and the limited discovery will

4    be on the question of expressive association.  And so the

5    parties will explore, as they see appropriate, the information

6    they think is necessary to better answer at the summary

7    judgment stage whether this is or is not an expressive

8    association.

9            I am limiting discovery at this point to written

10   discovery.  I'm not allowing depositions.  I don't think they

11   will ever be necessary, but you'll have to at least start with

12   the typical written discovery to make the case later if you

13   actually think some sort of deposition will become necessary,

14   and I'll consider that.

15           So on the idea that this can be resolved on written

16   discovery and then repositioned as a motion for summary

17   judgment, but limited in its factual development to this

18   question of expressive association, how long do the parties

19   think they need?  I was thinking something on the order of 90

20   days.

21           Mr. Kaempf, what do you think?

22           MR. KAEMPF:  Ninety days is fine, Your Honor.  We can

23   make that work.

24           THE COURT:  Thank you.

25           Ms. Payne?

1      MS. PAYNE:  Yes, 90 days is fine.

2      THE COURT:  So 90 days is when I'm saying discovery

3  would wrap up and you would replead it as summary judgment.

4  You can rely on your briefing that you've given me already and

5  just supplement it with what you think the facts you've learned

6  mean in the context of summary judgment.

7      The other thing, of course, that will happen in 90

8  days is that instead of a big question about whether I ought to

9  incorporate by reference Exhibits A, B, and C, you can inquire

10  into them and authenticate them, and they'll become actual

11  exhibits for summary judgment.

12      I want to ask -- and I'll start with you,

13  Ms. Payne -- whether you see for the limited purpose of

14  resolving these constitutional questions any other issue that

15  you believe firmly needs further factual development, not to

16  win on the merits but just to resolve these two constitutional

17  issues.

18      MS. PAYNE:  Well, I'm sorry, can you -- are there

19  other factual issues other than Exhibits A, B, and C, or other

20  factual issues that would be needed outside of the written

21  discovery that you've allowed?

22      THE COURT:  Thank you.

23      What I'm allowing is limited discovery, limited both

24  by topic and by method -- that is, by topic it's on expressive

25  association, and on method it's on written discovery, so that

1    we can move to summary judgment on largely the same record that

2    we have, but an expanded factual record and a different

3    procedural posture on the question before me.

4           So I've limited it to the issue of expressive

5    association.  Is there another issue on these constitutional

6    questions that you think requires more factual development

7    than -- to resolve it?

8           MS. PAYNE:  And so when you say limiting to

9    expressive association, are you limiting discovery to whether

10   the pageant is an expressive association, not on the overall

11   issue of freedom of association?

12         THE COURT:  The former.  I'm limiting it to whether

13   the pageant is or is not an expressive association.  Do you see

14   any other issue that requires some sort of similar limited

15   brief factual development?

16         Let me do this, Ms. Payne.  I'll give you 24 hours to

17   think about that.  You'll submit an email to the Court if you

18   think there's some other issue that in the 90-day window we're

19   opening up here requires further factual development.

20         How about you, Mr. Kaempf?  Any other issue you think

21   requires limited factual development?

22         MR. KAEMPF:  Well, our position, Your Honor, would be

23   that we don't think there's any discovery, but of course we

24   respect what you just ruled on the 90 days, limited to the

25   freedom of expression.

1          If I could, Judge, will we also push anti-SLAPP down

2    the road?  Because I don't want to launch into that if you

3    don't want to hear that today.

4          THE COURT:  Correct.

5          MR. KAEMPF:  Okay.  And then I would just also

6    mention briefly, if I could, counsel brought up the *IDK v.*

7    *Clark County* case.

8          THE COURT:  I don't need to hear more about that

9    right now.

10          MR. KAEMPF:  You do not.  Okay.  That is just fine.

11    Your Honor --

12          THE COURT:  In 90 days you'll submit further

13    briefing, and again keep in mind you don't need to redo an

14    entire summary judgment brief.  You can, if you choose to, but

15    you can also just rely on what you've briefed.  And then tell

16    me by way of briefing, simultaneous briefing in 90 days --

17    Well, actually let's do this.  Mr. Kaempf, it's going to be

18    your motion for summary judgment, so in 90 days you'll file

19    your motion for summary judgment, and you'll be able to rely on

20    Exhibits A, B, and C, and any facts that you think help you on

21    the question of expressive association.

22          And according to the normal rules, Ms. Payne, you'll

23    respond, and Mr. Kaempf, you'll reply.

24          MR. KAEMPF:  Thank you, Your Honor.

25          THE COURT:  The initial brief will be due in 90 days,

1  and then we'll take it from there.

2         MR. KAEMPF:  Thank you, Judge.

3         THE COURT:  And the parties will engage over the next

4  90 days in the limited written discovery that I mentioned a

5  moment ago, no depositions.

6         MR. KAEMPF:  Okay.

7         THE COURT:  All right.  Thank you.

8         MR. KAEMPF:  Thank you, Your Honor.  Thank you very

9  much.

10        THE COURT:  Good day.

11             (Proceedings concluded at 10:39 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

--o0o--


     I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*         *June 30, 2020*
_____    _____
BONITA J. SHUMWAY, CSR, RMR, CRR    DATE
Official Court Reporter

MR. KAEMPF:
[24]  3/8 4/14 8/5
8/9 8/25 9/12 10/3
10/14 10/20 11/6
11/13 18/19 22/13
23/10 29/2 30/22
32/21 34/21 35/4
35/9 35/23 36/1
36/5 36/7
MS. PAYNE: [31]
3/7 5/3 12/1 12/16
12/19 13/17 14/1
14/9 15/9 15/12
15/22 16/6 16/15
16/21 17/4 17/20
19/11 20/6 20/20
20/25 21/19 21/23
22/5 24/24 26/13
26/24 27/23 28/12
32/25 33/17 34/7
THE COURT: [54]

THE
COURTROOM
DEPUTY: [1]  3/2

**-**

--o0o [1]  37/2

**/**

/s/Bonita [1]  37/9

**1**

1000 [1]  2/14
10:39 [1]  36/11
1100 [1]  2/9
121 [1]  2/9
16 [2]  1/6 3/2
1958 [2]  22/22 23/2
1984 [1]  23/4

**2**

2010 [2]  11/17
30/15
2020 [3]  1/6 3/2
37/9
20th [1]  5/2
24 [1]  34/16

**3**

30 [1]  37/9
300 [1]  2/5
301 [1]  2/14
326-8188 [1]  2/15
3:19-cv-02048-MO
[1]  1/4
3:19-cv-2048-MO
[1]  3/5

**5**

503 [1]  2/15

**6**

65 [1]  2/5

**7**

7th [3]  5/2 5/5 5/10

**8**

8188 [1]  2/15

**9**

90 [10]  32/19 33/1
33/2 33/7 34/24
35/12 35/16 35/18
35/25 36/4
90-day [1]  34/18
97204 [3]  2/5 2/9
2/14
9:43 [1]  3/2

**A**

a.m [2]  3/2 36/11
ability [1]  27/16
able [1]  35/19
about [44]
above [1]  37/6
above-entitled [1]
37/6
absent [1]  14/16
absolutely [2]
13/18 21/12
abundantly [1]  6/2
access [1]  5/5
accommodation [1]
21/18
accommodations
[3]  20/10 20/11

accommodations...
[1] 20/19
according [2] 9/25
35/22
across [1] 19/22
across-the-board
[1] 19/22
activist [5] 9/22
9/22 10/5 24/4
29/10
activity [7] 18/9
26/2 26/6 26/7 27/3
27/3 27/4
actual [1] 33/10
actually [10] 7/22
13/10 13/10 15/21
22/10 25/1 27/3
27/7 32/13 35/17
adamant [1] 11/4
adept [1] 7/17
admission [1] 15/7
admits [2] 10/9
23/20
advance [2] 3/24
7/13
advancing [1]
13/21
affects [1] 27/16
afoul [8] 6/21 12/19
13/15 13/16 15/25
16/2 16/5 17/3

again [12] 4/7 10/5
11/20 18/14 21/14
27/24 29/9 30/2
31/3 31/13 31/15
35/13
against [4] 19/25
20/1 22/5 27/9
ago [1] 36/5
agree [5] 8/25 9/1
15/9 23/23 27/22
agreed [2] 4/18
8/24
agreeing [1] 28/8
ahead [1] 8/10
all [27] 4/19 5/21
5/25 7/9 8/16 8/24
9/4 10/1 10/14
10/16 11/9 18/3
18/6 19/6 19/9 20/4
21/5 21/23 22/8
22/13 23/21 24/2
24/15 28/6 31/12
31/14 36/7
allegations [2] 5/24
23/14
alleged [2] 5/22 9/3
allow [4] 16/13
17/1 17/17 22/4
allowed [5] 19/21
21/19 23/15 24/13
33/21
allowing [4] 16/13

allows [2] 17/15
31/16
along [2] 10/25
20/14
already [1] 33/4
also [21] 4/3 4/20
6/19 10/13 11/15
11/20 14/11 14/13
14/14 16/5 17/3
21/10 22/22 23/3
23/18 29/13 30/14
30/24 35/1 35/5
35/15
although [1] 31/6
altogether [1] 18/8
always [1] 25/10
am [5] 6/22 8/10
23/24 32/2 32/9
amended [3] 6/1
6/2 6/4
amendment [31]
6/7 6/18 6/19 8/14
9/9 9/11 9/15 9/21
10/24 11/7 11/18
11/20 12/1 13/15
15/1 16/3 16/6
16/18 18/16 19/3
21/15 22/16 22/22
23/8 24/8 24/11
24/14 30/4 30/19
31/3 31/7

**A**

AMERICA [5]  1/6
1/8 3/5 3/10 30/12
American [15]
13/16 13/17 13/25
14/8 14/24 15/7
15/8 15/20 16/3
16/4 16/13 16/14
16/20 17/16 17/17
Americans [1]
16/21
amplified [1]  23/2
analysis [8]  6/12
8/14 10/24 12/1
13/15 18/16 19/8
23/6
anchor [1]  30/7
ANITA [1]  1/3
another [4]  9/6
11/21 14/5 34/5
answer [9]  7/20
8/23 14/25 15/11
16/14 16/25 27/6
27/14 32/6
answering [1]  7/21
anti [1]  35/1
anti-SLAPP [1]
35/1
any [16]  4/14 4/20
4/21 14/15 14/16
14/18 19/18 21/2
21/3 27/2 27/7

33/14 34/5 34/20
34/23 35/20
anyone [1]  16/4
anything [2]  12/22
28/16
Apilado [1]  15/13
appeals [1]  28/3
appear [2]  4/9
25/20
APPEARANCES
[1]  2/2
applicant [3]  13/16
21/16 22/2
application [6]  4/22
5/19 5/22 6/18
13/23 22/11
applied [3]  9/2 9/5
18/17
applies [2]  8/1 8/4
apply [7]  8/5 18/16
18/18 18/19 19/15
20/12 20/20
appreciate [1]
18/12
appropriate [2]
3/21 32/5
appropriately [1]
12/12
are [30]  3/4 3/13
3/16 5/24 7/17 9/13
11/4 11/17 15/1
17/12 17/13 18/21

18/24 19/2 19/18
24/5 25/13 25/17
25/25 26/21 27/8
29/4 29/9 29/17
30/9 30/11 30/17
31/13 33/18 34/9
arguing [1]  14/21
argument [26]  1/15
5/11 6/14 6/15 6/16
6/18 6/23 7/2 7/3
7/11 11/3 12/15
12/20 13/13 13/19
14/6 14/7 15/12
17/14 19/15 20/5
20/20 22/1 22/1
27/6 27/19
arguments [5]  6/19
7/5 7/8 7/10 7/19
around [2]  15/16
31/12
art [1]  25/25
articulated [2]
29/22 29/23
as [40]
as-applied [1]  9/2
ask [10]  7/18 7/25
8/4 8/18 13/12
20/22 24/18 24/20
31/18 33/12
asked [4]  14/8
22/11 25/11 27/6
asking [11]  7/13

**A**

asking... [10]  8/20
10/8 10/23 12/23
13/8 15/24 19/16
21/25 22/12 27/10
asks [1]  7/23
aspect [1]  16/8
aspects [1]  25/13
assert [1]  27/22
asserts [1]  12/4
associate [5]  9/14
9/17 11/8 23/3 23/9
association [39]
association's [1]
27/16
associational [2]
14/10 17/11
assuming [2]  8/17
8/23
attacking [3]  24/9
30/2 31/13
attention [3]  7/9
23/22 24/3
attorney [2]  2/4
24/1
attorneys [1]  7/14
attributing [1]
28/15
authenticate [1]
33/10
available [1]  3/12
Ave [1]  2/14

**B**

away [1]  3/23

back [5]  6/6 14/23
22/15 26/18 27/18
backing [1]  22/10
bad [1]  17/19
baking [1]  18/5
ballpark [1]  11/1
banner [3]  19/24
21/7 23/1
barely [2]  29/21
29/23
based [16]  9/3 14/4
14/5 15/19 16/9
17/7 17/9 17/19
18/1 18/4 19/18
19/19 19/23 20/14
21/1 21/2
basically [4]  4/15
19/12 28/16 29/4
basis [1]  28/5
be [44]
beauty [2]  17/16
28/19
because [31]  3/22
4/17 5/6 5/22 6/8
6/17 6/24 7/4 7/8
7/16 10/5 12/22
13/1 14/6 14/9
14/24 17/19 17/22
19/16 21/1 23/1
23/8 24/13 25/12

26/5 26/21 27/14
28/22 30/7 31/18
35/2
because this [1]
14/6
become [2]  32/13
33/10
been [3]  3/15 6/20
25/19
before [6]  1/18 8/5
14/7 25/19 26/4
34/3
begin [1]  8/7
being [10]  3/11 9/6
10/5 11/5 11/24
13/21 16/13 17/1
20/11 24/9
believe [4]  16/16
30/4 31/2 33/15
below [1]  37/4
better [3]  4/21 32/1
32/6
big [2]  24/1 33/8
biological [15]
10/12 12/5 12/11
13/21 13/23 18/22
19/3 21/16 21/21
22/1 23/15 29/17
29/24 30/23 31/8
blanking [1]  25/9
board [1]  19/22
Bonita [3]  2/13

**B**

Bonita... [2]  37/9 37/10
born [7]  10/12 18/23 23/16 29/17 29/24 30/23 31/8
Boston [1]  22/24
both [4]  3/11 19/3 23/8 33/23
bought [1]  4/16
Boy [6]  9/18 9/23 9/24 10/4 10/5 29/10
breath [1]  31/25
brief [9]  9/20 12/3 22/17 22/19 25/18 30/25 34/15 35/14 35/25
briefed [2]  3/15 35/15
briefing [9]  6/15 7/16 8/16 11/4 18/18 33/4 35/13 35/16 35/16
briefly [3]  11/15 26/12 35/6
bring [4]  3/22 7/4 20/24 20/25
brought [1]  35/6
bunch [1]  23/22
business [2]  1/7 23/16

**C**

cake [2]  18/5 18/7
cake-baking [1] 18/5
call [2]  11/25 29/11
calling [1]  21/20
can [27]  3/16 4/12 4/23 10/14 10/20 12/14 12/15 15/25 17/17 17/23 20/4 24/4 24/5 26/3 26/12 26/14 29/16 31/14 32/1 32/15 32/22 33/4 33/9 33/18 34/1 35/14 35/15
can't [7]  12/22 13/1 14/17 16/2 19/13 26/9 30/12
cannot [7]  10/6 17/25 24/4 28/4 28/5 30/5 31/20
care [3]  6/1 6/3 27/14
carry [3]  20/2 21/7 30/5
carrying [2]  19/24 30/17
case [45]
cases [15]  5/25 7/17 8/18 17/24 18/2 18/3 18/6 18/6

18/6 22/12 25/22 25/24 26/15 30/14 31/20
cause [2]  22/3 37/6
celebrates [1]  17/16
celebrating [3]  15/6 15/7 19/24
certain [1]  25/13
certainly [4]  10/21 11/14 17/15 26/9
certified [1]  37/7
certify [1]  37/4
cetera [2]  5/20 7/20
chain [1]  6/11
challenge [4]  9/2 22/5 22/6 22/7
change [4]  18/9 19/1 19/8 22/12
changed [1]  22/20
chiding [1]  29/20
choose [2]  11/19 35/14
chooses [1]  30/16
Circuit [3]  11/17 25/8 30/15
cisgender [2]  12/12 28/17
cite [1]  24/19
cited [4]  25/8 25/13 25/18 30/25
claim [4]  5/12 14/11 14/11 28/6

Case 3:19-cv-02048-MO Document 116 Filed 07/06/20 Page 43 of 63

Clark [1]  35/7
Claybrooks [2]  30/6 31/9
clean [1]  10/1
clear [7]  5/25 6/2 14/2 14/4 25/2 27/25 27/25
client [5]  10/10 11/18 15/4 21/20 29/1
client's [4]  10/9 10/11 13/23 18/24
coin [1]  31/7
come [2]  6/6 11/12
commercial [1]  25/4
compelling [2]  20/17 22/18
compete [1]  29/7
competing [2]  24/10 27/9
complaint [9]  5/6 6/1 6/3 6/4 9/3 10/9 20/22 29/15 30/10
computer [2]  10/19 10/21
concede [2]  5/7 13/7
concluded [1]  36/11
conclusory [1]  5/25

conduct [11]  8/17 8/20 8/25 9/6 9/9 9/10 9/25 11/5 11/24 12/1 12/16 18/14 18/20 28/5 28/23 31/11
confident [1]  7/6
confirmed [1]  29/16
conformed [1]  37/7
consider [10]  3/17 3/21 4/3 4/21 5/8 6/17 6/23 7/5 7/8 32/14
considered [3]  4/12 25/15 25/19
considering [2]  3/25 4/5
consistent [3]  21/4 21/12 21/17
Constitution [1]  7/7
constitutional [10]  3/15 3/20 6/13 7/3 7/5 7/10 7/17 33/14 33/16 34/5
contains [1]  22/22
content [13]  12/3 12/5 12/9 12/11 12/22 12/24 12/25 13/3 13/7 13/8 14/20 18/9 28/5

contest [2]  23/12 31/15
contestant's [1]  27/4
contestants [5]  12/6 14/16 14/19 27/8 30/9
contestants' [1]  25/7
contests [1]  31/14
context [1]  33/6
contradicted [1]  28/13
contradicting [1]  30/11
contrary [5]  4/14 7/20 10/11 28/20 29/5
control [2]  14/15 14/18
conversations [1]  5/9
conversely [1]  15/6
core [3]  13/14 17/9 20/1
corporation [1]  1/7
correct [7]  12/17 12/20 13/18 16/16 20/21 35/4 37/5
could [12]  6/3 6/4 9/24 12/10 13/12 16/5 16/12 20/13

**C**

could... [4]  22/25
25/15 35/1 35/6
Council [1]  22/25
counsel [3]  3/7 4/8
35/6
County [1]  35/7
course [2]  33/7
34/23
court [25]  1/1 1/19
2/13 9/16 9/16 9/23
10/18 12/21 12/24
13/4 22/22 23/24
25/8 26/4 26/6 26/8
27/2 27/5 27/6 28/2
28/2 29/20 31/4
34/17 37/11
Courthouse [1]
2/13
courts [2]  6/20
26/15
creative [3]  14/15
14/18 15/5
CRR [2]  2/13 37/10
CSR [2]  2/13 37/10
cv [2]  1/4 3/5

**D**

Dale [20]  9/18 9/21
9/23 10/4 11/2 11/2
11/11 11/12 11/22
23/7 24/3 28/10

29/3 29/6 29/9 29/9
29/12 31/10 31/17
31/19
damages [2]  5/12
24/1
DATE [1]  37/10
day [3]  22/25 34/18
36/10
days [11]  32/20
32/22 33/1 33/2
33/8 34/24 35/12
35/16 35/18 35/25
36/4
deal [1]  5/20
December [4]  5/2
5/2 5/5 5/10
December 20th [1]
5/2
December 7th [3]
5/2 5/5 5/10
decide [7]  12/21
12/24 12/25 13/5
26/5 26/7 26/19
decided [1]  26/9
decides [1]  13/4
decision [3]  4/7
6/11 8/22
declaration [1]
27/1
defendant [19]  1/9
2/8 3/9 7/6 8/7 12/2
12/4 12/11 12/22

29/3 29/6 29/9 29/9
14/17 14/20 19/16
24/12 27/7 28/6
29/14
defendant's [10]
4/11 7/3 12/8 14/6
21/5 21/12 25/14
27/3 27/12 30/17
defendants [1]
27/21
defer [1]  6/8
deference [1]  28/11
define [3]  27/19
27/21 27/22
defines [1]  27/20
definition [1]  29/25
definitional [1]
27/19
delaying [1]  3/25
demand [1]  6/7
denial [1]  5/22
depend [2]  13/20
25/4
deposition [1]
32/13
depositions [2]
32/10 36/5
derivative [3]  6/17
6/18 6/21
described [2]  6/22
12/13
desire [1]  20/24

**D**

determine [2]  26/10 29/1
determining [1]  24/22
development [6]  32/17 33/15 34/6 34/15 34/19 34/21
devoted [1]  8/2
did [5]  5/2 5/5 5/9 19/10 22/12
didn't [5]  5/5 20/2 20/12 21/22 23/6
different [4]  7/9 13/25 21/2 34/2
direct [1]  20/16
disagree [2]  6/21 19/14
disagreeing [1]  30/3
disclaimer [1]  27/7
discover [2]  26/22 26/24
discovery [22]  4/1 14/14 14/16 25/12 26/10 26/20 26/21 26/23 27/1 32/3 32/3 32/9 32/10 32/12 32/16 33/2 33/21 33/23 33/25 34/9 34/23 36/4
discrete [1]  4/11

discrimination [1]  28/22
discriminatory [3]  27/25 28/3 28/7
discussion [3]  3/19 3/23 32/1
dismiss [1]  4/2
dispute [5]  4/9 4/25 12/8 21/20 31/15
disputed [1]  18/21
DISTRICT [4]  1/1 1/2 1/19 2/13
diversity [1]  24/8
do [29]  4/7 4/14 4/17 4/24 5/2 6/13 8/25 9/13 10/4 10/20 14/17 15/9 16/6 17/2 17/11 17/12 20/22 23/25 24/4 26/20 28/25 31/14 31/16 32/18 32/21 34/13 34/16 35/10 35/17
doctrine [1]  15/18
doctrines [1]  3/15
does [15]  4/9 6/24 7/3 8/14 13/19 17/3 19/8 20/24 21/14 22/1 25/2 25/4 28/23 29/10 30/5
doesn't [10]  12/21 12/25 13/15 14/18

15/4 19/15 20/19 25/20 27/18 28/10
doing [4]  1/7 5/15 18/7 29/21
don't [27]  4/4 5/11 7/15 7/18 8/3 11/15 14/3 16/17 17/19 20/10 23/25 24/12 25/16 25/24 25/25 26/2 26/4 26/14 26/21 27/13 31/15 32/10 34/23 35/2 35/3 35/8 35/13
down [2]  28/23 35/1
dressing [1]  31/1
driven [1]  20/24
due [1]  35/25
during [2]  27/6 27/9

**E**

each [2]  10/20 27/9
earlier [2]  16/23 17/14
easily [1]  6/3
easy [2]  9/4 25/10
ed [1]  30/18
eds [1]  11/19
either [1]  13/1
Elaine [1]  18/2
else's [1]  19/14
email [1]  34/17

Case 3:19-cv-02048-MO    Document 29    Filed 07/06/20    Page 46 of 63

empower [1]  10/11
empowering [1]
 18/22
end [2]  6/6 23/7
endorse [1]  29/5
ends [1]  20/10
enforcement [2]
 9/9 20/15
engage [1]  36/3
engaged [1]  19/9
enhance [1]  22/3
enough [3]  7/1
 11/13 29/23
entail [1]  25/17
enter [2]  21/19 22/5
entire [3]  15/14
 18/4 35/14
entirely [1]  6/17
entitled [1]  37/6
essentially [1]
 16/14
establish [1]  5/9
et [2]  5/20 7/20
et cetera [2]  5/20
 7/20
ethnicity [1]  28/19
even [9]  4/9 12/21
 12/24 22/20 23/5
 25/8 26/6 27/14
 29/6
event [1]  4/20

event... [1]  4/12
eventually [3]  4/23
 8/19 11/1
ever [3]  13/2 26/18
 32/11
every [1]  31/25
everyone [1]  28/18
everything [1]
 17/12
exactly [5]  10/8
 21/4 23/23 24/3
 25/2
example [3]  21/3
 21/4 30/6
except [1]  6/16
exclude [3]  16/4
 16/9 18/4
excluding [2]  15/19
 19/17
exclusion [7]  14/4
 14/5 15/21 16/1
 16/2 19/19 19/22
exclusions [1]
 17/19
excuse [5]  16/18
 19/4 27/23 28/3
 31/10
exercise [2]  14/18
 19/4
exercises [1]  14/14
Exhibit [5]  5/1 5/1
 12/7 25/14 28/14

Exhibit A [1]  12/7
Exhibit B [1]  5/1
Exhibit Z [1]  5/1
exhibits [9]  3/18
 4/4 5/4 5/8 23/14
 33/9 33/11 33/19
 35/20
Exhibits A [5]  3/18
 4/4 33/9 33/19
 35/20
exhibits show [1]
 5/4
exist [1]  23/6
exists [1]  15/21
expanded [1]  34/2
explore [2]  25/16
 32/5
express [3]  22/21
 27/17 29/6
expresses [1]  25/7
expressing [1]
 28/10
expression [7]  15/5
 23/9 27/11 27/12
 30/25 31/5 34/25
expressive [49]
expressively [1]
 29/5
expressly [2]  19/20
 30/21
extent [1]  16/22

# F

**Facebook [3]** 5/1 5/7 5/9
**fact [7]** 4/25 13/22 19/20 19/23 20/17 23/18 24/2
**facts [7]** 20/15 20/18 24/19 25/3 25/5 33/5 35/20
**factual [10]** 4/9 32/17 33/15 33/19 33/20 34/2 34/6 34/15 34/19 34/21
**fail [1]** 22/19
**fails [1]** 14/6
**Fair [2]** 11/13 28/22
**federal [3]** 6/17 7/5 7/10
**fees [2]** 5/20 24/1
**female [1]** 29/8
**females [8]** 10/12 18/23 23/16 29/17 29/24 30/23 31/8 31/16
**file [1]** 35/18
**filed [1]** 5/6
**fine [3]** 32/22 33/1 35/10
**Firm [1]** 2/8
**firmly [1]** 33/15
**first [47]**

**focuses [1]** 12/3
**follow [1]** 17/24
**following [1]** 18/2
**for-profit [1]** 11/19
**force [6]** 9/24 10/10 17/23 17/25 31/18 31/20
**forced [6]** 10/6 16/13 17/17 19/13 23/1 30/5
**forces [1]** 17/23
**forcing [4]** 18/5 18/6 18/8 18/10
**foregoing [1]** 37/4
**form [1]** 7/2
**formally [1]** 5/16
**former [1]** 34/12
**forward [7]** 3/20 4/13 4/20 5/17 6/15 7/2 32/2
**found [1]** 18/25
**framed [1]** 9/7
**free [24]** 6/19 6/25 7/11 10/24 11/8 15/1 15/25 16/7 16/8 16/8 16/19 19/3 19/4 19/10 21/15 22/5 22/6 22/7 22/12 22/23 23/8 23/9 23/19 31/22

**freedom [20]** 3/23 9/16 9/17 15/2 16/15 16/15 16/23 16/24 17/2 17/5 17/6 17/8 17/9 21/15 23/1 23/3 24/16 28/5 34/11 34/25
**front [1]** 4/10
**frowned [1]** 6/20
**fundamental [1]** 31/21
**further [6]** 7/8 22/3 22/23 33/15 34/19 35/12

# G

**gay [6]** 9/20 9/21 15/14 15/16 31/1 31/2
**gender [1]** 5/23
**generates [1]** 25/7
**get [17]** 3/14 3/20 3/22 7/12 7/24 8/3 8/15 11/1 11/10 14/23 15/3 15/11 17/7 24/12 24/12 28/9 30/4
**gets [1]** 27/18
**getting [1]** 16/7
**give [3]** 3/23 4/7 34/16
**given [1]** 33/4

## G

giving [1] 30/9
glad [1] 4/16
GLIB [1] 22/24
go [9] 4/20 5/17 7/2
7/3 8/9 8/10 24/5
26/22 26/24
goal [1] 28/18
goes [2] 4/10 4/13
going [24] 4/17 5/8
6/8 6/22 6/23 7/2
7/9 7/12 7/13 7/13
7/15 8/3 9/18 13/5
13/6 13/9 16/11
21/9 21/11 23/24
23/25 24/18 32/2
35/17
good [2] 25/5 36/10
got [1] 31/11
GREEN [2] 1/3 3/5
ground [1] 31/19
grounded [1] 16/14
group [6] 13/14
18/4 19/23 22/24
24/22 31/21
guarantee [1] 15/2
guess [3] 11/2 13/12
15/24
guide [1] 32/1

## H

had [7] 5/6 15/14

18/19 20/15 20/17
25/16 25/19
Hale [1] 31/10
hand [1] 11/11
happen [1] 33/7
happened [1] 7/23
harms [1] 4/12
has [12] 6/19 6/20
13/9 17/11 17/12
18/1 18/25 21/8
21/10 27/7 28/2
28/6
hasn't [1] 7/23
hated [1] 26/18
have [34] 3/15 3/25
4/8 4/10 4/14 4/24
5/3 5/5 6/4 7/18
9/18 10/6 11/18
13/11 13/25 15/6
16/3 16/9 16/19
16/25 17/6 17/8
17/15 18/25 20/6
21/9 24/3 24/8
24/10 24/12 25/18
25/20 32/11 34/2
haven't [2] 8/8
25/16
having [2] 23/19
26/18
he [1] 9/20
he's [1] 26/18
hear [7] 4/4 5/13

6/23 10/14 11/2
35/3 35/8
heard [1] 26/17
heart [1] 23/17
held [2] 9/23 22/23
help [2] 7/24 35/20
helpful [1] 10/18
helps [1] 14/25
her [12] 5/22 5/23
9/21 10/10 21/1
21/11 21/11 23/14
23/20 23/23 29/15
31/13
here [27] 3/4 3/11
4/23 4/25 6/1 7/12
8/9 8/22 9/6 9/8
9/14 9/20 10/9 11/5
11/25 12/16 13/8
14/5 18/14 18/15
18/19 19/9 19/15
24/2 24/17 29/6
34/19
hierarchy [1] 6/12
highly [1] 7/6
him [2] 22/4 26/18
hires [1] 30/7
his [1] 9/24
holding [1] 24/3
holds [1] 11/17
homosexual [2]
9/25 29/10
homosexuality [2]

## H

**homosexuality... [2]**
10/6 29/11
**Honor [20]** 4/15
4/18 8/6 8/11 9/2
9/13 10/13 11/14
12/2 23/11 24/25
25/5 29/3 30/24
31/23 32/22 34/22
35/11 35/24 36/8
**HONORABLE [1]**
1/18
**hours [1]** 34/16
**how [19]** 4/3 5/25
6/2 7/2 7/25 8/3 8/4
16/6 18/14 18/16
18/18 19/7 19/7
20/24 22/12 25/6
25/22 32/18 34/20
**Hurley [38]**
**hypothetical [5]**
7/14 7/18 7/21 7/22
15/21
**hypothetically [1]**
13/22
**hypotheticals [1]**
7/15

## I

**I'd [1]** 20/5
**I'll [14]** 3/22 3/23
4/7 4/20 5/14 6/6
24/24 32/14 33/12
34/16
**I'm [32]** 3/24 4/16
5/15 6/6 6/7 6/10
6/23 7/9 7/12 7/12
7/13 7/15 8/8 8/16
8/23 10/23 11/2
15/24 16/11 22/12
23/24 24/18 25/9
25/9 26/18 26/20
28/8 32/10 33/2
33/18 33/23 34/12
**I've [4]** 6/22 7/14
26/17 34/4
**idea [3]** 3/17 28/19
32/15
**ideas [1]** 7/17
**identifiable [2]**
26/13 26/24
**identify [1]** 17/2
**identity [3]** 5/23
15/14 15/16
**IDK [2]** 25/1 35/6
**imagine [1]** 7/23
**impact [3]** 13/25
27/20 27/23
**implication [2]**
21/15 21/25
**implications [1]**
6/25
**important [7]** 10/5
27/2 27/5 30/20
**impression [1]** 7/16
**in Lahmann [1]**
28/2
**include [6]** 10/10
18/10 19/1 19/13
23/1 31/18
**included [3]** 23/3
23/24 31/21
**includes [3]** 3/17
5/19 11/8
**including [1]** 13/21
**inclusion [2]** 9/24
10/7
**incorporate [3]**
23/15 29/16 33/9
**incorporation [1]**
3/17
**indiscernible [4]**
14/10 14/12 15/13
21/8
**individual [3]** 1/3
21/7 27/11
**individuals [1]** 27/8
**information [2]**
28/15 32/5
**inherently [1]** 26/9
**initial [1]** 35/25
**injunctive [4]** 4/13
4/17 5/12 5/18
**inquire [1]** 33/9

## I

instance [3]  25/4 25/6 25/12
instead [1]  33/8
interest [1]  22/18
interested [1]  14/24
interfere [8]  12/23 13/2 13/6 13/9 15/5 15/8 17/10 17/18
interference [2]  13/13 26/5
interferes [1]  17/21
interview [2]  25/14 27/10
involve [1]  25/14
involved [2]  16/18 16/19
involves [1]  11/20
Irish [1]  19/25
is [173]
isn't [4]  13/4 13/5 13/9 14/4
issue [23]  4/3 4/6 5/21 5/24 6/10 13/5 16/18 16/19 17/6 17/6 18/25 23/8 26/5 29/9 29/14 29/18 33/14 34/4 34/5 34/11 34/14 34/18 34/20
issues [8]  3/13 3/20 4/21 6/8 21/10 33/17 33/19 33/20 33/21 33/23 33/24 33/6 33/11 34/1 35/14 35/18 35/19
it [85]
it's [36]  3/23 5/18 5/25 6/2 6/17 6/21 7/22 8/21 10/18 13/8 15/20 17/21 18/5 18/6 18/13 19/17 19/19 21/2 21/2 21/3 23/14 24/7 25/2 25/10 25/17 25/21 25/21 28/8 29/6 29/16 29/22 30/8 30/14 33/24 33/25 35/17
its [17]  8/15 8/20 8/24 9/25 12/2 12/3 12/4 12/5 13/10 14/15 14/19 14/20 18/24 26/21 27/17 28/12 32/17
itself [3]  12/10 14/11 28/4

## J

January [1]  5/19
Jaycees [1]  9/15
John [3]  2/8 3/9 8/6
join [3]  11/11 20/13 22/2
JUDGE [3]  1/19 35/1 36/2
judgment [12]  4/2 4/21 32/3 32/7 32/15 33/3 33/6 33/11 34/1 35/14 35/18 35/19
juggling [1]  7/17
June [3]  1/6 3/2 37/9
just [36]  4/24 5/20 6/22 7/12 7/18 7/22 9/5 9/10 12/14 13/8 13/13 13/24 14/2 14/23 15/1 15/11 17/19 17/21 18/10 18/10 18/15 20/5 22/11 23/12 28/22 29/6 29/13 30/3 30/8 30/12 33/5 33/16 34/24 35/5 35/10 35/15

## K

Kaempf [20]  2/8 2/8 3/9 4/14 8/2 8/6 8/23 9/7 9/12 10/14 15/3 18/13 22/9 28/25 30/22 30/22 32/21 34/20 35/17 35/23
keep [1]  35/13
key [1]  23/13
kind [3]  25/21 26/1 29/20
Klein [2]  18/1 18/2
know [24]  5/11

## K

know... [23]  5/16
9/19 10/2 10/17
11/15 14/16 20/9
22/23 23/12 23/13
25/10 25/18 25/22
25/24 25/25 26/1
26/2 26/4 26/16
26/17 26/22 27/9
29/21
knowing [1]  26/21
Kristie [3]  30/25
31/4 31/9

## L

Lahmann [2]  28/2
28/3
landscape [1]  22/13
largely [1]  34/1
last [1]  6/10
lately [1]  7/14
later [7]  3/22 5/13
5/14 5/20 7/24
11/12 32/12
launch [1]  35/2
law [9]  2/4 2/8 14/4
19/11 20/15 21/18
24/22 27/25 31/7
laws [3]  20/10
20/11 20/19
lawsuit [1]  23/19
league [2]  15/15

learned [1]  33/5
least [6]  3/19 5/17
6/2 22/5 29/5 32/11
let [5]  14/23 15/11
15/17 16/20 34/16
let's [1]  35/17
LGBT [6]  19/21
19/23 19/24 19/25
21/1 21/10
LGBTQ [1]  22/24
liability [1]  1/7
lies [2]  28/19 28/21
lifestyle [1]  29/11
like [9]  9/20 9/22
11/18 20/5 24/5
25/21 30/6 30/14
30/18
likely [1]  6/6
likes [1]  31/14
limit [1]  5/12
limitation [1]  20/13
limitations [3]  4/6
4/10 5/16
limited [14]  1/7 4/1
13/21 32/2 32/3
32/17 33/13 33/23
33/23 34/4 34/14
34/21 34/24 36/4
limiting [4]  32/9
34/8 34/9 34/12
limits [3]  4/11

## M

line [1]  8/18
lines [1]  10/25
little [4]  10/17 25/1
29/22 32/1
LLC [1]  3/6
locally [1]  23/22
long [1]  32/18
look [6]  7/25 18/2
29/3 29/8 29/12
31/9
lot [5]  24/19 25/2
25/4 25/6 29/23

made [2]  13/13
25/5
make [6]  4/24
10/18 14/7 28/23
32/12 32/23
makes [1]  7/5
making [3]  22/20
27/19 30/11
male [3]  21/16
21/21 22/2
march [1]  29/7
matter [1]  3/25
matters [1]  15/18
may [2]  8/7 17/8
McDermott [3]
11/16 30/15 31/10
me [24]  3/21 4/9
4/10 10/14 10/18

Case 3:19-cv-02048-MO Document 29 Filed 07/06/20 Page 52 of 63

me... [19]  10/20
14/23 14/25 15/11
15/17 16/12 16/19
19/2 19/4 23/24
24/20 26/13 27/23
28/3 31/10 33/4
34/3 34/16 35/16
mean [7]  14/3
15/10 15/14 15/19
21/14 22/1 33/6
means [2]  23/21
29/25
media [2]  23/22
24/2
membership [3]
28/1 28/4 28/7
men [7]  17/1 17/2
17/10 17/12 17/13
31/1 31/2
mention [3]  11/15
23/18 35/6
mentioned [4]
22/15 22/16 30/15
36/4
merits [3]  6/16 6/23
33/16
message [56]
method [3]  24/21
33/24 33/25
methodology [1]
24/20

Mexico [2]  1/8/3
MICHAEL [1]
1/18
might [2]  8/4 13/16
mind [2]  4/19 35/13
minimum [2]  4/12
6/24
minute [2]  15/3
18/15
MISS [4]  1/6 3/5
3/10 30/12
Miss United [3]  3/5
3/10 30/12
mission [3]  12/4
12/8 21/12
MO [2]  1/4 3/5
moment [7]  7/12
10/3 10/17 12/14
14/24 20/5 36/5
morally [1]  10/1
more [9]  4/4 8/16
12/12 22/20 29/6
29/22 29/23 34/6
35/8
Morrison [1]  2/9
MOSMAN [1]  1/18
motion [4]  4/2
32/16 35/18 35/19
move [1]  34/1
moving [1]  3/20
Mr [1]  2/8
Mr. [17]  4/14 8/2

8/23 9/7 9/12 9/21
10/14 15/3 18/13
22/9 28/25 30/22
30/22 32/21 34/20
35/17 35/23
Mr. Dale [1]  9/21
Mr. Kaempf [16]
4/14 8/2 8/23 9/7
9/12 10/14 15/3
18/13 22/9 28/25
30/22 30/22 32/21
34/20 35/17 35/23
Ms [3]  2/4 5/6
19/11
Ms. [13]  4/24 11/24
19/7 23/11 24/5
24/24 29/13 30/8
31/16 32/25 33/13
34/16 35/22
Ms. Payne [11]
4/24 11/24 19/7
23/11 24/24 29/13
30/8 32/25 33/13
34/16 35/22
Ms. Universe [2]
24/5 31/16
much [8]  9/20
13/12 18/12 22/8
24/15 27/14 28/24
36/9
muddle [1]  11/10
must [1]  19/1

## M

muting [1]  10/19
my [22]  3/18 4/7
6/2 6/25 7/12 7/16
7/19 7/19 7/21 8/8
10/9 10/10 10/11
10/21 11/18 18/24
19/2 21/20 21/22
24/21 25/18 27/1

## N

name [1]  3/7
narrowly [1]  22/18
nationally [1]  23/22
Native [16]  13/16
13/17 13/24 14/8
14/23 15/7 15/8
15/20 16/3 16/4
16/12 16/14 16/20
16/20 17/16 17/17
natural [7]  10/12
18/23 23/16 29/17
29/24 30/23 31/8
natural-born [7]
10/12 18/23 23/16
29/17 29/24 30/23
31/8
nature [2]  4/16
4/22
necessarily [1]
20/20
necessary [3]  32/6

need [10]  4/4 7/7
10/16 12/21 12/25
27/13 31/25 32/19
35/8 35/13
needed [2]  26/10
33/20
needs [3]  14/19
26/5 33/15
Nevada [1]  1/7
never [1]  18/17
new [2]  18/3 31/19
newspaper [1]
30/16
newspapers [1]
11/17
next [3]  9/4 28/9
36/3
Ninety [1]  32/22
Ninth [3]  11/17
25/8 30/15
no [19]  1/4 3/4 4/15
5/14 7/7 8/10 12/2
19/1 20/13 21/22
24/3 24/9 26/5
26/13 26/23 27/20
30/9 31/8 36/5
NOELLE [1]  1/3
non [5]  13/16 15/8
16/14 16/20 17/17
non-Native [5]
13/16 15/8 16/14

nonconstitutional
[1]  3/13
noon [1]  6/5
Norma [3]  30/25
31/4 31/9
normal [1]  35/22
not [83]
note [2]  29/19
30/20
noted [1]  29/20
nothing [4]  12/18
14/13 17/11 27/15
now [7]  8/8 15/2
19/1 22/12 25/9
31/25 35/9
number [2]  10/22
10/23

## O

O'Brien [8]  8/19
10/25 11/11 17/4
18/18 19/9 22/15
23/6
o0o [1]  37/2
obligated [1]  6/11
occur [3]  5/2 5/5
5/9
off [2]  10/21 30/13
Official [1]  37/11
oh [3]  8/10 10/21
30/8
okay [4]  29/9 35/5

**O**

okay... [2]  35/10 36/6
on-stage [1]  25/15
one [11]  5/23 6/10 9/5 10/17 10/22 11/9 11/11 22/10 24/9 25/11 26/25
only [15]  7/4 7/21 8/25 11/10 14/5 15/18 17/2 17/15 21/15 22/5 22/6 22/7 23/15 28/21 31/8
op [2]  11/19 30/18
op-ed [1]  30/18
op-eds [1]  11/19
OPAA [4]  8/14 8/19 8/24 22/4
open [3]  5/17 9/21 29/9
opening [1]  34/19
openly [2]  9/20 15/7
opinion [2]  23/4 31/10
opinions [2]  24/9 24/10
opportunity [1]  25/16
opposed [2]  9/25 17/20

opposing [2]  10/6 19/2
oral [3]  1/15 7/2 27/6
order [3]  6/7 26/20 32/19
ordered [1]  23/24
ordering [1]  26/20
OREGON [9]  1/2 1/9 6/13 6/18 6/20 7/3 7/7 28/1 31/15
Oregon's [1]  21/18
organization [2]  25/3 25/6
organization's [1]  28/11
organizations [1]  19/13
original [2]  22/10 37/6
other [16]  4/21 21/3 24/5 27/9 29/19 31/7 31/14 31/15 33/7 33/14 33/19 33/19 33/19 34/14 34/18 34/20
otherwise [6]  4/11 7/6 16/23 17/24 17/25 18/2
ought [3]  4/3 6/16 33/8
our [21]  4/15 7/9

9/4 12/2 13/20 16/25 19/3 19/14 22/17 22/19 23/19 23/23 29/5 29/25 30/5 30/5 30/10 31/6 31/17 31/21 34/22
ours [2]  24/6 29/22
out [8]  13/10 15/13 18/3 23/21 24/7 25/1 29/13 30/24
outside [2]  20/19 33/20
over [4]  14/15 14/18 23/13 36/3
overall [3]  4/22 20/9 34/10
own [9]  3/18 6/25 27/11 28/11 28/14 28/14 28/14 28/15 29/6

**P**

pageant [43]
pageants [3]  1/8 24/5 25/18
pages [1]  8/2
parade [7]  19/21 20/1 20/2 20/3 20/13 22/25 29/20
part [2]  5/17 20/2
participant [1]  21/3
participate [1]

Case 3:19-cv-02048-MO Document 29 Filed 07/06/20 Page 55 of 63

**participate... [1]** 19/21

**participation [2]** 20/13 20/23

**particular [4]** 19/23 20/15 25/24 26/8

**particularly [2]** 19/15 26/25

**parties [4]** 3/15 32/5 32/18 36/3

**Patrick's [1]** 22/25

**pause [5]** 10/3 10/16 12/14 16/11 20/4

**Payne [14]** 2/4 3/8 4/24 11/24 19/7 19/11 23/11 24/24 29/13 30/8 32/25 33/13 34/16 35/22

**PC [1]** 2/8

**people [3]** 19/21 20/12 30/16

**Perfect [1]** 20/7

**permitting [1]** 17/10

**person [2]** 19/25 31/20

**personal [2]** 25/14 27/10

**personally [2]** 30/3

**ph [1]** 28/22

**Photography [1]** 18/3

**plainly [1]** 9/17

**plaintiff [26]** 1/4 2/4 3/8 4/23 5/21 8/21 9/8 9/20 9/22 9/23 10/8 11/6 12/23 13/2 13/6 13/8 19/16 21/8 21/10 22/17 23/20 24/9 27/15 29/7 30/2 31/18

**plaintiff's [7]** 4/8 5/12 6/16 19/17 20/23 21/6 23/7

**platform [3]** 10/10 23/20 30/10

**plays [1]** 6/15

**pleadings [5]** 12/7 14/13 14/17 26/2 26/10

**please [1]** 3/7

**point [18]** 3/24 7/1 11/4 11/10 15/9 15/18 17/18 23/13 23/19 23/23 24/7 24/8 25/5 25/17 29/13 29/19 30/24 32/9

**pointing [1]** 24/25

**28/7 28/21**

**portion [1]** 25/21

**portions [1]** 25/20

**Portland [4]** 1/9 2/5 2/9 2/14

**position [5]** 4/16 5/3 14/25 23/23 34/22

**positive [1]** 21/4

**possibly [1]** 16/2

**posture [1]** 34/3

**potential [1]** 19/18

**potentially [3]** 13/7 15/5 19/19

**Potter [1]** 26/17

**preexisting [2]** 18/21 19/10

**preliminary [2]** 3/13 6/10

**preserve [1]** 14/19

**presupposes [1]** 9/17

**pride [1]** 19/25

**principle [1]** 6/22

**prior [2]** 14/14 23/6

**probably [1]** 6/4

**problem [5]** 6/1 6/3 6/5 6/9 16/12

**problems [1]** 17/8

**procedural [1]** 34/3

**proceedings [3]**

# P

proceedings... [3]
1/17 36/11 37/5
profit [2]  11/18
11/19
promote [8]  18/24
21/5 21/6 21/17
23/12 23/15 28/18
29/25
promoted [1]  15/15
promoting [7]  12/4
12/9 12/9 12/11
18/23 21/8 21/9
prong [1]  13/1
properly [1]  5/22
protect [1]  17/19
protection [3]  9/10
16/3 30/19
protections [1]
15/25
proves [1]  23/19
providers [2]  20/1
20/2
public [9]  10/10
13/10 20/9 20/11
20/19 21/18 27/8
28/16 28/20
published [1]  31/20
punished [1]  24/1
purely [1]  5/18
purpose [1]  33/13
purposes [2]  3/22

push [1]  35/1
put [2]  13/10 18/7

# Q

question [36]  4/1
4/8 4/24 5/18 7/21
7/25 8/9 8/13 8/14
8/16 8/17 8/17 8/24
9/5 11/24 13/12
14/8 17/3 18/13
20/9 21/22 22/9
22/10 24/17 24/18
24/21 25/15 26/11
27/5 27/10 28/25
32/4 32/18 33/8
34/3 35/21
questions [9]  3/16
7/12 10/23 13/11
25/6 26/8 27/1
33/14 34/6
quick [1]  15/11
quite [2]  7/1 7/22
quote [2]  18/23
23/20
quoted [1]  26/18

# R

raised [1]  9/5
rather [3]  6/3 8/21
24/19
reach [1]  26/3
reaches [1]  26/1

really... [1]  6/9
ready [1]  11/2
really [13]  5/2
12/21 12/25 13/5
15/15 15/18 18/17
23/7 24/17 25/17
25/21 26/1 30/8
reason [1]  14/6
reasons [4]  7/24
10/17 17/11 25/11
recognized [3]
22/21 23/2 31/4
reconcile [1]  16/6
record [6]  3/7 4/21
18/22 34/1 34/2
37/5
redo [1]  35/13
reference [2]  3/18
33/9
referring [1]  16/23
refusing [1]  18/8
regarding [1]  28/16
regulate [2]  8/15
9/14
regulated [3]  9/6
11/5 11/25
regulates [2]  8/19
8/25
regulation [2]  9/8
20/16
rejected [1]  19/16
relief [10]  4/13 4/23

# R

relief... [8]  5/13
8/20 11/6 12/19
13/15 20/12 22/17
27/16
reluctant [1]  26/19
rely [4]  25/2 33/4
35/15 35/19
removed [1]  5/6
replead [1]  33/3
reply [1]  35/23
reporter [3]  2/13
10/18 37/11
repositioned [1]
32/16
requesting [3]
12/18 13/2 13/6
requests [1]  22/17
require [4]  6/7 6/24
22/4 24/19
required [2]  17/1
21/19
requires [4]  34/6
34/14 34/19 34/21
requiring [3]  16/18
16/20 29/4
Reserving [1]  7/19
resolution [1]  3/25
resolve [4]  4/3 5/16
33/16 34/7
resolved [1]  32/15
resolving [1]  33/14

respect [3]  24/4
31/17 34/24
respond [1]  35/23
restate [1]  20/5
resulted [2]  20/16
20/17
return [1]  5/19
revenue [1]  25/7
right [40]
rights [2]  9/22
11/21
RMR [2]  2/13
37/10
road [1]  35/2
Roberts [4]  9/15
9/18 23/4 28/1
Room [1]  2/14
ruled [1]  34/24
rules [2]  18/21
35/22
run [6]  13/15 13/16
15/25 16/2 16/5
17/3
runs [2]  6/21 12/19

# S

S.W [3]  2/5 2/9
2/14
said [11]  5/15 9/16
16/19 16/22 18/2
18/13 21/10 23/12
23/12 28/2 29/13
same [10]  11/1

relief [3]  24/4
16/25 18/13 19/2
22/9 28/25 34/1
satisfy [1]  6/7
say [14]  7/4 7/19
13/16 17/25 18/3
18/6 25/25 26/15
28/17 28/20 30/8
30/9 30/10 34/8
saying [8]  17/22
20/8 20/10 26/18
28/20 29/20 30/3
33/2
says [9]  12/11 17/24
19/1 19/12 24/11
28/1 28/22 29/15
31/8
scoutmaster [1]
9/19
Scouts [6]  9/19 9/23
9/24 10/4 10/6
29/10
screenshots [1]  5/1
second [1]  4/6
secondly [2]  13/19
26/20
see [7]  7/8 20/5
25/22 26/16 32/5
33/13 34/13
seeking [4]  8/21 9/8
9/13 27/16
seem [3]  25/22

Case 3:19-cv-02048-MO   Document 145-4   Filed 12/05/20   Page 58 of 66

seem... [2]  25/24 26/15
seems [2]  25/22 26/15
selecting [1]  12/5
selection [4]  14/11 14/11 14/15 14/19
send [1]  32/2
sending [1]  25/5
sense [2]  5/23 7/5
sent [1]  26/8
separate [2]  4/16 11/22
serious [1]  5/24
seriously [1]  3/24
serve [2]  22/18 28/4
service [1]  18/8
services [1]  18/11
set [1]  20/18
several [1]  8/2
share [2]  20/24 21/3
she [11]  10/9 23/12 23/13 23/20 23/21 24/11 30/4 30/5 31/13 31/14 31/14
she's [1]  21/9
Shenoa [2]  2/4 3/8
should [2]  5/12 28/11
shouldn't [1]  16/19

shown [4] 5/12 10/20 13/1 28/11
showing [1]  14/17
shows [2]  14/14 25/25
Shumway [3]  2/13 37/9 37/10
side [1]  31/7
signature [2]  37/7 37/7
signing [1]  37/4
silent [4]  28/16 29/14 29/18 30/21
silently [1]  29/7
similar [1]  34/14
simpler [1]  4/25
simply [1]  20/12
simultaneous [1]  35/16
since [2]  4/20 8/2
sisterhood [2]  18/23 29/25
situation [1]  11/20
skips [1]  23/13
SLAPP [1]  35/1
slice [1]  30/13
small [1]  23/16
Smith [1]  5/6
so [74]
softball [2]  15/15 15/15
solved [1]  6/9

solves [1] 6/4
some [8]  3/13 4/11 5/25 6/24 24/1 32/13 34/14 34/18
somebody [1]  19/14
somebody's [1]  17/23
someone [7]  18/1 18/5 18/7 18/8 18/10 19/1 30/18
someone's [1]  17/25
something [4]  9/10 23/11 27/5 32/19
somewhat [1]  5/24
somewhere [1]  20/14
sorry [5]  8/10 21/24 21/24 25/9 33/18
sort [13]  6/11 8/22 14/15 14/16 14/18 18/13 20/18 27/2 27/7 27/18 28/9 32/13 34/14
sought [3]  4/23 20/11 23/22
speak [5]  17/24 18/1 18/5 19/13 24/12
speaker [1]  30/17
speaking [4]  10/19 13/22 17/12 19/19

## S

speech [26]  6/19
6/25 7/11 8/15 8/19
10/25 11/21 13/25
15/2 15/25 16/8
16/9 16/15 16/19
16/24 17/6 19/4
19/10 20/16 20/17
21/15 22/5 22/6
22/7 22/12 23/8
Spence [6]  8/18
10/25 11/11 17/3
18/18 19/9
spoke [1]  19/20
squishy [1]  25/2
St [1]  22/25
stage [3]  25/15
27/10 32/7
start [8]  3/19 3/19
7/11 9/12 19/7
24/24 32/11 33/12
starts [1]  20/9
state [3]  3/7 6/13
20/16
stated [5]  18/20
21/8 21/12 23/3
26/4
statement [3]  9/25
28/12 28/13
STATES [9]  1/1
1/6 1/8 1/19 2/13
3/5 3/10 22/21

30/12
station [1]  30/7
status [18]  14/5
15/19 15/21 16/1
16/2 16/4 16/9 17/7
17/13 17/20 17/23
17/25 18/4 18/25
19/19 19/22 19/24
20/14
status-based [1]
19/19
statute [5]  4/6 4/10
4/22 5/15 20/16
step [3]  8/21 22/2
28/9
Stewart [1]  26/17
stop [1]  15/17
straight [1]  10/1
street [3]  2/5 2/9
24/14
struggle [1]  7/15
struggled [1]  7/14
subject [3]  8/16 9/9
30/18
submit [3]  23/5
34/17 35/12
submits [2]  11/19
30/18
such [2]  13/3 14/19
suggest [1]  28/11
suggested [3]  16/1
16/5 27/13

suggests [1]  20/23
Suite [2]  2/5 2/9
summarize [1]
26/12
summary [12]  4/2
4/21 32/3 32/6
32/16 33/3 33/6
33/11 34/1 35/14
35/18 35/19
supplement [1]
33/5
support [2]  29/11
29/24
supposed [1]  26/22
Supreme [4]  9/16
22/21 25/8 28/1
sure [3]  10/19
22/14 30/16
surely [1]  26/2

## T

tailored [1]  22/18
take [10]  5/14 6/1
6/3 6/12 10/23 11/3
16/17 20/18 31/25
36/1
takes [1]  8/18
taking [2]  4/1 18/15
talent [2]  25/19
25/20
talk [4]  3/14 14/3
18/15 30/14
talked [5]  13/24

talked... [4]  22/9
22/11 22/16 30/7
talking [5]  6/8 9/2
15/1 15/20 17/8
telephone [1]  2/8
telescopic [1]  8/22
tell [6]  7/13 7/18
24/20 25/10 26/14
35/15
telling [1]  26/13
tentative [4]  3/19
4/7 7/1 7/1
terms [1]  20/11
test [8]  24/21 24/23
25/1 25/24 26/13
26/24 28/25 29/12
than [5]  21/3 29/6
29/23 33/19 34/7
thank [21]  3/11
5/14 8/12 11/23
18/12 19/6 21/13
22/8 23/10 24/15
24/25 28/24 31/23
31/24 32/24 33/22
35/24 36/2 36/7
36/8 36/8
that [282]
that's [39]
the cases [1]  30/14
their [26]  11/19
15/15 17/13 18/4

18/9 18/19 19/24
20/1 23/1 27/9
27/11 27/21 27/23
27/23 28/10 28/14
28/14 28/14 28/15
28/18 28/21 28/21
29/21 31/2 31/3
31/3
them [4]  18/10
18/19 33/10 33/10
then [24]  3/14 4/1
4/7 5/18 7/25 9/18
10/23 13/19 13/23
16/23 18/14 18/25
19/7 20/22 23/7
27/20 28/9 29/15
30/11 31/25 32/16
35/5 35/15 36/1
there [25]  3/13 3/16
4/25 7/7 10/3 10/16
12/14 12/15 12/21
12/24 13/4 13/7
14/25 15/17 16/11
16/12 20/4 20/13
24/5 25/13 26/5
26/13 33/18 34/5
36/1
there's [10]  5/17
14/13 14/22 16/18
25/24 26/23 27/15
27/20 34/18 34/23
these [6]  18/3 18/6

18/8 33/13 33/14 33/16
34/5
they [24]  5/2 5/4
11/18 15/14 15/15
18/18 19/14 20/10
22/25 24/11 25/19
27/21 27/22 28/17
28/20 29/6 29/11
30/6 30/17 31/19
32/5 32/6 32/10
32/19
they'll [1]  33/10
they're [7]  27/10
28/10 28/15 28/16
28/20 29/21 30/17
thing [1]  33/7
things [1]  4/24
think [49]
think that [1]  15/16
thinking [1]  32/19
third [2]  2/14 5/21
this [50]
those [6]  3/21 5/5
5/7 16/6 25/16
25/17
though [1]  11/3
thought [4]  6/25
15/4 17/14 17/18
through [4]  5/8
10/24 24/1 30/11
time [3]  5/6 5/13
11/9

**T**

today [10] 3/4 3/12
5/3 6/5 6/8 7/9 7/15
9/2 27/6 35/3
today's [2] 3/21 4/5
together [1] 11/11
told [2] 15/3 16/12
too [2] 17/19 27/14
topic [2] 33/24
33/24
towards [1] 8/18
traditional [6] 8/13
10/24 11/25 18/16
22/11 22/16
traditionally [1]
19/8
transcript [3] 1/17
37/5 37/6
transgender [10]
9/22 19/2 19/17
19/18 21/2 21/9
24/10 28/17 29/8
31/16
treat [1] 25/23
tree [2] 6/11 8/22
tricky [1] 10/17
true [1] 29/15
truly [1] 25/23
try [2] 11/11 18/3
trying [1] 30/8
turn [1] 24/16
TV [2] 25/25 30/7

two [12] 2/3 4/7
7/16 10/17 10/23
12/3 13/1 13/11
18/17 18/17 24/14
33/16
two-way [1] 24/14
typical [1] 32/12

**U**

U.S [1] 9/16
unclear [2] 25/17
25/21
under [11] 7/7 8/13
11/25 18/15 19/9
21/18 22/19 22/19
23/6 30/3 31/19
understand [2]
7/20 14/25
undisputed [1]
23/14
unique [1] 24/13
UNITED [9] 1/1
1/6 1/8 1/19 2/13
3/5 3/10 22/21
30/12
Universe [2] 24/5
31/16
unless [1] 23/23
unlike [1] 21/7
until [1] 3/25
up [14] 3/22 4/1
4/16 5/14 6/12 7/4
15/14 20/10 22/2

22/10 31/13 33/3
34/19 35/6
uplift [1] 28/18
uplifting [1] 12/10
upon [2] 6/20 8/24
upward [1] 8/21
us [11] 4/25 7/24
8/18 8/24 10/24
25/5 26/8 27/6
27/18 29/4 31/18
use [2] 26/19 30/10

**V**

values [1] 10/1
versus [4] 3/5 16/8
25/3 25/23
very [11] 10/5
10/18 14/4 18/12
22/8 23/18 24/15
27/24 27/25 28/24
36/8
veterans [2] 22/24
29/20
Videoconference
[1] 1/16
view [10] 3/19 4/14
6/2 6/8 7/1 11/16
15/4 19/2 19/10
23/20
viewpoint [1] 27/17
views [1] 25/7
violates [2] 19/3
31/21

Case 3:19-cv-02048-MO    Document 127    Filed 07/06/20    Page 62 of 63

waiting [1]  5/16
want [20]  3/14 5/11
5/13 7/11 8/4 14/2
14/3 20/2 20/22
24/11 24/12 24/16
26/24 27/22 27/24
29/24 30/10 33/12
35/2 35/3
wanted [6]  21/7
21/16 22/2 27/1
29/7 30/24
wants [3]  10/10
23/20 29/7
was [27]  4/17 5/22
9/20 9/21 14/24
15/4 16/14 16/23
17/14 17/18 19/17
19/23 19/23 19/25
20/1 20/11 20/13
21/25 22/21 22/24
28/2 29/9 29/23
31/1 31/1 31/2
32/19
Washington [1]
15/14
wasn't [2]  19/22
21/22
way [17]  4/11 7/3
7/9 9/6 9/7 12/18
13/1 13/24 14/20
20/14 22/20 24/14

27/16 27/20 27/21
30/13 35/16
we [45]
we'll [7]  3/14 5/20
8/15 11/9 11/12
15/3 36/1
we're [15]  7/2 8/3
9/1 11/1 15/20 16/7
18/14 23/14 23/19
24/2 30/2 30/3
30/20 30/21 34/18
website [2]  28/14
29/16
well [22]  4/17 7/19
8/8 9/1 11/9 13/13
13/21 14/7 17/14
18/20 19/4 19/12
21/20 22/10 22/19
24/25 26/25 29/14
31/6 33/18 34/22
35/17
went [1]  23/21
were [7]  7/6 12/24
13/22 19/21 20/1
26/6 26/7
what [60]
what's [4]  9/3 11/5
19/9 24/23
when [17]  3/22
7/18 7/20 10/19
16/11 17/7 22/15
25/22 26/16 27/10

28/13 30/6 30/9
30/14 31/9 33/2
34/8
where [2]  18/6 31/1
whether [28]  5/1
5/11 5/13 5/18 5/19
5/21 6/13 8/19
12/21 13/4 13/5
17/21 24/17 24/22
25/3 26/8 27/2 27/6
27/7 27/9 27/11
27/11 29/1 32/7
33/8 33/13 34/9
34/12
which [19]  4/2 7/23
8/17 9/24 10/11
10/25 11/8 11/17
11/17 12/8 12/12
13/1 14/16 14/17
23/13 25/9 28/16
29/4 29/23
who [10]  11/8
11/19 16/4 17/1
17/13 19/1 21/7
21/16 30/7 30/18
why [8]  13/14
13/15 14/6 14/8
14/11 24/3 25/11
31/19
will [15]  4/20 5/17
7/24 7/24 10/25
11/10 24/20 32/3

Case 3:19-cv-02048-MO     Document 29-3     Filed 07/06/20     Page 63 of 63

# W

**will...** [7] 32/5
32/11 32/13 33/7
35/1 35/25 36/3
**win** [3] 7/6 23/5
33/16
**window** [1] 34/18
**within** [2] 20/25
28/19
**without** [6] 7/25
19/16 20/18 20/18
26/21 37/6
**woman** [3] 23/21
29/15 30/1
**women** [29] 12/5
12/9 12/10 12/12
12/12 13/22 13/23
15/6 15/7 17/16
17/17 18/22 19/2
19/3 19/17 19/18
21/5 21/6 21/9
21/17 22/4 23/13
23/15 27/19 27/21
28/17 28/17 28/18
31/2
**won** [1] 31/14
**won't** [1] 24/19
**work** [1] 32/23
**world** [1] 7/23
**worry** [1] 8/3
**would** [44]
**wouldn't** [1] 27/22

**wrap** [1] 33/3
**wrapped** [1] 15/14
**writer** [1] 30/16
**writers** [1] 11/19
**written** [7] 28/23
32/9 32/12 32/15
33/20 33/25 36/4

# Y

**Yamhill** [1] 2/5
**Yeah** [2] 15/10
31/25
**Yes** [8] 10/15 11/7
15/23 16/16 16/22
27/24 29/3 33/1
**yet** [3] 7/24 11/2
14/3
**you** [153]
**you'll** [8] 11/16
32/11 34/17 35/12
35/18 35/19 35/22
35/23
**you're** [18] 5/8 7/21
10/19 10/19 12/18
15/19 17/16 17/22
18/6 18/7 18/7
18/10 18/10 20/8
23/25 26/12 26/22
27/19
**you've** [9] 8/2 13/13
16/1 16/5 31/11
33/4 33/5 33/21
35/15